### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

Civil Action Number:

FRANKLIN MERRILL; LORA LEE;
BRENT LEE; ANTHONY GLOVER;
KEITH HERRING; ANTHONY DENNIS;
LARRY JURCAK; SAMI NASR;
JENNIFER THOMAS; and ROBERT
THOMAS**,** all individuals,

        Plaintiffs,

v.

PATHWAY LEASING LLC, a Colorado
limited liability company; and
MATTHEW HARRIS, an individual,

        Defendants.

---

### COMPLAINT AND JURY DEMAND

---

    Plaintiffs Franklin Merrill, Lora Lee, Brent Lee, Anthony Glover, Keith Herring, Anthony Dennis, Larry Jurcak, Sami Nasr, Jennifer Thomas, and Robert Thomas (hereinafter collectively referred to as "Plaintiffs") by and through the undersigned counsel, bring this Complaint, as a collective action, pursuant to the Fair Labor Standards Act of 1938 (the "FLSA"), 29 U.S.C. §§ 201 *et seq.*, demand a jury trial, and allege as follows:

## **INTRODUCTION**

1.      Defendants Pathway Leasing LLC and Matthew Harris (hereinafter "Defendants") billed themselves as a lessor of trucks for independent contractors, when in fact, Defendants sought to employ truckers to move goods in commerce without paying the cost of hiring and retaining employees.

2.      Plaintiffs were duped into signing lease agreements for trucks believing they could operate those trucks as independent contractors and improve their lives through the exercise of entrepreneurial spirit. In reality, after signing these lease agreements, and other ancillary agreements, Defendants controlled every aspect of Plaintiffs' work, including who they could drive for, how and when they could repair or maintain their trucks, and incredulously, Defendants even required the companies that Plaintiffs drove for to remit Plaintiffs' pay to Defendants so that Defendants could make deductions from Plaintiffs' pay and issue them paychecks. These deductions never included payroll deductions mandated by state and federal law governing the payment of wages, but rather, included improper and unlawful deductions that resulted in Plaintiffs being paid less than minimum wage on many occasions. Some Plaintiffs were paid what equated to just a few dollars per hour despite working an average of 70 hours per pay period.

3.      Defendants engaged in this behavior willfully and without regard for the economic welfare of their employees and with full knowledge that Plaintiffs were conferring benefits upon Defendants that were improperly procured.

4.      As such, Plaintiffs seek relief from the Court, including relief for those of Defendants' employees that are similarly situated.

## COLLECTIVE ACTION

5.      Plaintiffs bring this Complaint as a collective action pursuant to 29 U.S.C. § 216(b).

6.      All named Plaintiffs are similarly situated: they are all employees, or former employees, of Defendants, and Defendants have failed to pay them minimum wage on many occasions due to improper deductions from Plaintiffs' pay.

7.      Therefore, Plaintiffs request the Court certify this collective action as soon as possible so that Plaintiffs and this Court may craft a notice process to all other similarly situated employees of Defendants who may desire to opt-in to this action.

8.      The Court's prompt certification of this collective action will allow discovery to commence so the parties and the Court may proceed to evaluating the merits of Plaintiffs' Complaint.

## JURISDICTION, VENUE AND PARTIES

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) as this Complaint raises a federal question and a private cause of action, including a collective action, is authorized by the FLSA. This Court also has supplemental jurisdiction over Plaintiffs' non-statutory claims by virtue of 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over Defendants as Defendants are residents of the State of Colorado and are engaged in continuous and systematic business activities within this State.

11.     Venue is proper in the District of Colorado pursuant to 28 U.S. C. §§ 1391(a), (b) and (c) because all Defendants are residents of the State of Colorado, a substantial part of the

events or omissions giving rising to Plaintiffs' claims occurred in the District of Colorado and all Defendants are subject to the personal jurisdiction of the Court.

12.     Plaintiff Franklin Merrill is a resident of the State of Texas and is, or was formerly, employed by Defendants. At all relevant times described herein, Plaintiff was an employee engaged in commerce, as defined by the FLSA. Specifically, Plaintiff was, or is, an "over-the-road" trucker, *i.e.*, a trucker involved in transporting goods long distances, and in many instances, Plaintiff does not, or did not, return home from work trips for weeks or months at time.

13.     Plaintiff Lora Lee is a resident of the State of Texas and is, or was formerly, employed by Defendants. At all relevant times described herein, Plaintiff was an employee engaged in commerce, as defined by the FLSA. Specifically, Plaintiff was, or is, an "over-the-road" trucker, *i.e.*, a trucker involved in transporting goods long distances, and in many instances, Plaintiff does not, or did not, return home from work trips for weeks or months at time.

14.     Plaintiff Brent Lee is a resident of the State of Texas and is, or was formerly, employed by Defendants. At all relevant times described herein, Plaintiff was an employee engaged in commerce, as defined by the FLSA. Specifically, Plaintiff was, or is, an "over-the-road" trucker, *i.e.*, a trucker involved in transporting goods long distances, and in many instances, Plaintiff does not, or did not, return home from work trips for weeks or months at time.

15.     Plaintiff Anthony Glover is a resident of the State of Virginia and is, or was formerly, employed by Defendants. At all relevant times described herein, Plaintiff was an

employee engaged in commerce, as defined by the FLSA. Specifically, Plaintiff was, or is, an "over-the-road" trucker, *i.e.*, a trucker involved in transporting goods long distances, and in many instances, Plaintiff does not, or did not, return home from work trips for weeks or months at time.

16.    Plaintiff Keith Herring is a resident of the State of Michigan and is, or was formerly, employed by Defendants. At all relevant times described herein, Plaintiff was an employee engaged in commerce, as defined by the FLSA. Specifically, Plaintiff was, or is, an "over-the-road" trucker, *i.e.*, a trucker involved in transporting goods long distances, and in many instances, Plaintiff does not, or did not, return home from work trips for weeks or months at time.

17.    Plaintiff Anthony Dennis is a resident of the State of Texas and is, or was formerly, employed by Defendants. At all relevant times described herein, Plaintiff was an employee engaged in commerce, as defined by the FLSA. Specifically, Plaintiff was, or is, an "over-the-road" trucker, *i.e.*, a trucker involved in transporting goods long distances, and in many instances, Plaintiff does not, or did not, return home from work trips for weeks or months at time.

18.    Plaintiff Larry Jurcak is a resident of the State of Illinois and is, or was formerly, employed by Defendants. At all relevant times described herein, Plaintiff was an employee engaged in commerce, as defined by the FLSA. Specifically, Plaintiff was, or is, an "over-the-road" trucker, *i.e.*, a trucker involved in transporting goods long distances, and in many instances, Plaintiff does not, or did not, return home from work trips for weeks or months at time.

19.     Plaintiff Sami Nasr is a resident of the State of Texas and is, or was formerly, employed by Defendants. At all relevant times described herein, Plaintiff was an employee engaged in commerce, as defined by the FLSA. Specifically, Plaintiff was, or is, an "over-the-road" trucker, *i.e.*, a trucker involved in transporting goods long distances, and in many instances, Plaintiff does not, or did not, return home from work trips for weeks or months at time.

20.     Plaintiff Jennifer Thomas is a resident of the State of Texas and is, or was formerly, employed by Defendants. At all relevant times described herein, Plaintiff was an employee engaged in commerce, as defined by the FLSA. Specifically, Plaintiff was, or is, an "over-the-road" trucker, *i.e.*, a trucker involved in transporting goods long distances, and in many instances, Plaintiff does not, or did not, return home from work trips for weeks or months at time.

21.     Plaintiff Robert Thomas is a resident of the State of Texas and is, or was formerly, employed by Defendants. At all relevant times described herein, Plaintiff was an employee engaged in commerce, as defined by the FLSA. Specifically, Plaintiff was, or is, an "over-the-road" trucker, *i.e.*, a trucker involved in transporting goods long distances, and in many instances, Plaintiff does not, or did not, return home from work trips for weeks or months at time.

22.     Defendant Pathway Leasing LLC is a limited liability company duly organized and existing under the laws of the State of Colorado, with its principal place of business located in Littleton, Colorado. At all relevant times described herein, Defendant was an enterprise engaged in commerce, as defined by the FLSA. Specifically, Defendant was, and remains, in the

business of assisting companies in shipping goods all over the United States, and upon information and belief, has gross annual sales of over $500,000.

23.     Defendant Matthew Harris, upon information and belief, is the principal member and registered agent for Defendant Pathway Leasing LLC and resides in Englewood, Colorado. At all relevant times described herein, Defendant was an enterprise engaged in commerce, as defined by the FLSA. Specifically, Defendant was, and remains, in the business of assisting companies in shipping goods all over the United States, and upon information and belief, has gross annual sales of over $500,000.

24.     Even if Defendants do not realize gross annual sales of over $500,000, the Court still has jurisdiction over Plaintiffs' claims as it cannot be reasonably disputed that each Plaintiff was, or remains, engaged in commerce within the meaning of the FLSA.

## THE WILLFUL MISCLASSIFCATION OF PLAINTIFFS AS INDEPENDENT CONTRACTORS

25.     Defendants organized Pathway Leasing in January 2012. The stated purpose of the company is to "provid[e] reliable, fuel efficient equipment that meets the needs of independent contractors; partner[] with quality partner carriers; includ[e] only necessary, value-added services; and structur[e] every lease to be affordable where each customer will have an asset worth owning upon lease completion."[1]

26.     Thus, Defendants bill themselves as a company that provides trucks to independent contractors, through lease agreements, such that the independent contractors may

---

[1] https://www.pathwayleasing.com/about-us/ (last visited August 31, 2016).

procure "reliable truck[s] that meet[] the needs of their business."[2] Further, Defendants state: "Throughout the lease, Pathway and its affiliates deliver business solutions to help the IC [independent contractor] manage their business and ultimately realize the goal of owning their truck."[3]

27.    In reality, Defendants prey upon individuals with poor credit or other circumstances that prevent them from purchasing a truck through more traditional means. Under the guise of offering a "lease" to these purported "independent contractors," Defendants are able to employ individuals, including Plaintiffs, and avoid the expense of acknowledging the employer-employee relationship, *e.g.*, the payment of payroll taxes.

28.    After Plaintiffs signed their respective "lease" agreements, Defendants exercised near total control over Plaintiffs' work-related activities, including dictating what company or companies any given Plaintiff could perform work for and demanding that all payments from those companies be delivered to Defendants, rather than directly to Plaintiffs as one would expect if Plaintiffs were actually independent contractors, each running their own business. This was done, in part, so that Defendants could then issue a paycheck to Plaintiffs after making improper and unlawful deductions.

29.    These paychecks often contained deductions for various types of advances made by Defendants to Plaintiffs. Notably, these paychecks never included deductions for any type of payroll withholding required under federal and state law when an employer-employee relationship is formed.

---

[2] https://www.pathwayleasing.com (last visited August 31, 2016).
[3] Id.

30.     Upon information and belief, Defendants have a contractual relationship or other agreement, whether written or verbal, with the companies that Defendants designate as acceptable for Plaintiffs to provide services. The presumed purpose for any such agreement is to allow both Defendants and certain companies to avoid the expense of retaining employees. As such, these companies may be joint employers for purposes of liability under the FLSA; and therefore, Plaintiffs reserve all rights to amend this Complaint at a future date (presumably after Defendants file an answer or discovery commences) to join these companies as party defendants to this action.

31.     Despite Defendants having tried to structure their relationship with Plaintiffs for the purpose of avoiding an employer-employee relationship, the economic realities of the relationship dictate that Plaintiffs are in fact Defendants' employees. Under the FLSA, courts look to the "economic realities test" which examines the totality of the circumstances, with an examination of the following factors: (1) the degree of control exercised by the employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the employer's business. *See, e.g., Barlow v. C.R. England, Inc.*, 703 F.3d 497, 506 (10th Cir. 2012). Importantly, the "focal point in deciding whether an individual is an employee is whether the individual is *economically dependent* on the business to which he renders service." *Id.* (emphasis in original).

32.     Here, all Plaintiffs work for Defendants pursuant to Defendants' complete control over the working relationship. Plaintiffs are not allowed to drive for any companies that

Defendants do not approve. In fact, many Plaintiffs have been asked to drive for other companies, have forwarded that request to Defendants, and have been told by Defendants that they are not allowed to drive for any companies other than those that Defendants specify. Moreover, Defendants control the manner and ability by which Plaintiffs may service and repair their leased vehicles.

33.    Defendants "lease" their vehicles with a service warranty, but in many cases, Defendants will not honor the service arrangement when the truck needs to be repaired. In fact, all Plaintiffs have suffered at least one instance in which the truck needed to be repaired, and Defendants failed to honor the service warranty. Rather, Defendants offered to loan the respective Plaintiffs money to pay for the repairs so long as Plaintiffs signed a promissory note in exchange. Defendants would deduct payments due under the promissory notes from Plaintiffs' paychecks. The terms of the promissory notes dictated that while a promissory note was in effect, a Plaintiff could never receive more than $900 in a pay period nor would a Plaintiff receive less than $100 in a pay period. In many pay periods, various Plaintiffs were paid as little as $100 to $200 dollars despite working around 70 hours in the same pay period.

34.    Thus, no Plaintiff was afforded the opportunity to expend their own efforts in order to increase their profit. Rather, the terms of the "lease" agreement, combined with the effect of the promissory notes, all but guaranteed Plaintiffs would be indebted to Defendants, and if any Plaintiff was ever able to complete payments on the terms of a "lease," that Plaintiff was guaranteed to have grossly overpaid for the vehicle. Related, Plaintiffs were led to believe that they were "investing" in their own business through repairs or improvements made to their

trucks, but in reality, Plaintiffs were increasing the profits of Defendants while inadvertently being tricked into reducing their own wages to below that mandated by the FLSA.

35.     The working relationship between Plaintiffs and Defendants was meant to be as permanent as possible. In fact, the only way a Plaintiff could exit the relationship would be to pay off the lease, an unlikely event given the usurious nature of the terms, or default on the lease. By design, that is, through the use of promissory notes and a service warranty never meant to be honestly interpreted, Defendants sought to extend the employment relationship as long as possible thereby increasing their profits.

36.     While there can be no doubt that a certain amount of skill is required to engage in the trucking industry as a driver, driving itself is not a unique skill traditionally exercised by independent contractors. To be sure, truck drivers that are true independent contractors do exist; however, many companies utilize employee-drivers. Many drivers prefer to be employee-drivers as this eases the burden of maintaining licensure and ensuring regulatory compliance. In either event, it cannot be stated that driving in and of itself is a highly skilled avocation, even if it is difficult and, at times, stressful.

37.     Finally, Plaintiffs' work was absolutely integral to Defendants' business. While Defendants advertise themselves as being in the business of leasing trucks, the truth is Defendants' income is heavily dependent on the *driving* performed by their purported "lessees." Put simply: the longer a Plaintiff drives Defendants' trucks, the more repairs are needed, the more promissory notes are signed; and not surprisingly, Defendants make more profit. This analysis does not include the value of whatever agreements must exist between Defendants and the certain companies that Plaintiffs must exclusively drive for as dictated by Defendants.

Defendants are not in the leasing business, but rather, are in the business of moving goods, or assisting certain companies in moving goods, from one location to another. Through a convoluted, albeit somewhat sophisticated system of leases and warranties, Defendants are able to pass themselves off as something they are not. As to the true nature of Defendants' business, Plaintiffs' work is critical to Defendants' success.

38.     Importantly, the primary question posed by the economic realities test is: "Whether the individual is *economically dependent* on the business to which he [or she] renders service?" The answer to this question must unequivocally be answered in the affirmative. Plaintiffs are not allowed to drive for other companies, Defendants' pre-approved companies remit payment for Plaintiffs' services directly to Defendants rather than to Plaintiffs, and Defendants then make whatever deductions they see fit (but not federal and state mandated payroll deductions). As such, without their relationship with Defendants, Plaintiffs would realize no economic gain whatsoever. As it is, Plaintiffs' economic gain constitutes, in many pay periods, starvation level wages.

39.     Because Defendants bill themselves as a leasing company, but in reality are a shipper of goods with a somewhat sophisticated system of leases and warranties demonstrating only one possible goal: the avoidance of retaining employees, all Plaintiffs have been intentionally misclassified as independent contractors by Defendants.

## DEFENDANTS' WILLFULLY FAILED TO PAY PLAINTIFFS MINIMUM WAGE

40.     The FLSA requires that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce . . . or is employed in an enterprise engaged in commerce . . . wages at the following rates: (C) \$7.25 an hour . . . ." 29 U.S.C. § 206(a)(1)(C).

41.     Defendants set up agreements with certain companies desiring to ship goods such that Defendants' purported lessees or independent contractors, the Plaintiffs in this Complaint, would be required to drive for these companies as part of their "lease agreement" with the Defendants. As already described herein, Plaintiffs were not independent contractors or in a lessor/lessee relationship with Defendants; rather, Plaintiffs were employees of Defendants. Also as already alleged, Plaintiffs can discern no other reason for Defendants to have created this elaborate arrangement of leases, warranties and promissory notes other than for the purpose of avoiding the expense and burden of hiring actual employees.

42.     To make matters worse, Defendants targeted truck drivers with poor credit or no ability to obtain traditional financing, *i.e.*, Defendants targeted individuals with few, if any, other options to earn a living. Thus, each and every time Defendants failed to pay Plaintiffs minimum wage, the failure was willful.

43.     At the beginning of Plaintiffs' employment relationship, that is, before Defendants began to make deductions for promissory notes executed for maintenance and repairs, Plaintiffs may have been paid at a rate above the minimum wage. However, as each successive Plaintiff became faced with maintenance and repairs costs (costs that should have been covered under Defendants' service warranty) and was unable to afford such costs, the Plaintiff would be left with no other option but sign a promissory note to Defendants. Defendants then deducted these promissory note payments from Plaintiffs' paychecks, resulting in a failure to pay the required minimum wage as each Plaintiff worked approximately 70 hours in any given pay period and received amounts that sometimes equated to just a few dollars per hour.

44.     Moreover, as Plaintiffs were employees of Defendants, not independent contractors or lessees, any deductions for maintenance or repair of Defendants' property were not proper deductions as these costs are not properly transferable to an employee. Even if they were, Defendants did not follow the proper procedures for doing so, and in any event, cannot still fail to pay the minimum wage. Plaintiffs have suffered damages from Plaintiffs' willful failure to pay minimum wage and are entitled to collect all unpaid wages, liquidated damages, fees, costs, and interest.

## COUNT I
### Failure to Pay Minimum Wage in Violation of the FLSA
### 29 U.S.C. §§ 201 *et seq.*

45.     Plaintiffs incorporate all allegations contained herein as if fully stated in this Paragraph.

46.     Defendants are employers within the meaning of the FLSA.

47.     Plaintiffs are employees within the meaning of the FLSA.

48.     Plaintiffs were employed, or remained employed, by Defendants.

49.     The FLSA requires that employers pay employees not less than the minimum wage, currently set at $7.25 per hour.

50.     In many instances, Plaintiffs wages were subject to improper deductions by Defendants resulting in the payment of less than minimum wage.

51.     Plaintiffs have suffered damages as a result of Defendants' failure to pay minimum wage, and seek those unpaid wages, liquidated damages, fees, costs, and interest at the highest allowable rate under law.

## COUNT II

**Rescission or Voiding of Lease Agreements, Warranties and Promissory Notes, and Restitution**

52.     Plaintiffs incorporate all allegations contained herein as if fully stated in this Paragraph.

53.     Defendants represented to Plaintiffs that the lease agreements, warranties, and promissory notes Plaintiffs were entering into were for the purpose of allowing Plaintiffs to operate as independent contractors.

54.     Plaintiffs were not informed that these lease agreements were actually to operate as a backdoor around the requirements of the FLSA. Moreover, Plaintiffs were leased trucks under false premises, *i.e.*, Plaintiffs were informed the trucks were in good mechanical order, when in fact, most of Plaintiffs' vehicles required serious and expensive maintenance near the beginning of the lease term.

55.     When Plaintiffs presented these maintenance items for payment under Defendants' warranty, Defendants either refused to pay or made partial payments in violation of the warranty terms. As a result, Plaintiffs entered into promissory notes for the costs of maintenance or repair that were not properly shifted to Plaintiffs, whether they were employees or independent contractors.

56.     As such, the lease agreements, warranties, and promissory notes were entered into by Plaintiffs due to material misrepresentations made by Defendants and due to Defendants' desire to sidestep the requirements of the FLSA.

57.     It is within the power of the Court to rescind or void these contracts based on Defendants' material misrepresentations or as being against public policy.

58.     Plaintiffs request these contracts be rescinded or voided by the Court, with appropriate restitution ordered in the form of an order of the Court directing Defendants to return all monies paid to Plaintiffs under these contracts.

## COUNT III
### Unjust Enrichment and Restitution

59.     Plaintiffs incorporate all allegations contained herein as if fully stated in this Paragraph.

60.     Defendants benefitted from Plaintiffs' labor in various ways, including: receiving the benefit of transported goods without paying Plaintiffs minimum wage; receiving monies for maintenance and repair of Defendants' property when these costs were not properly transferable to Plaintiffs; receiving lease payments and warranty payments, and receiving interest on lease agreements and promissory notes.

61.     All of these benefits inured to Defendants to the detriment of Plaintiffs as Plaintiffs failed to receive all earned wages, paid for the maintenance and repair of their employers' property, and paid monies under lease agreements and warranty agreements, including interest, that they should not have paid as employees. Moreover, some Plaintiffs have had "their" trucks repossessed, can no longer afford to pay their bills, and are in, or on the verge, of bankruptcy.

62.     As such, Plaintiffs are entitled to restitution in the form of Defendants' disgorgement of all amounts paid under the lease agreements, warranties and promissory notes, including any interest paid thereunder.

## COUNT IV
### Quantum Meruit

63.     Plaintiffs incorporate all allegations contained herein as if fully stated in this Paragraph.

64.     Plaintiffs conferred a benefit upon Defendant through shipping goods for Defendant, maintaining and repairing Defendants' property, remitting lease payments and warranty payments, and paying interest on lease agreements and promissory notes.

65.     Defendants were certainly aware of receipt of these benefits; in fact, it is Plaintiffs' allegation that Defendants designed to receive these benefits despite their knowledge that their conduct was improper and unlawful.

66.     Defendants have accepted and retained these benefits under circumstances that are inequitable to Plaintiffs as Plaintiffs have failed to receive all earned wages, paid for the maintenance and repair of their employers' property, and paid monies under lease agreements and warranty agreements, including interest, that they should not have paid as employees. Moreover, some Plaintiffs have had "their" trucks repossessed, can no longer afford to pay their bills, and are in, or on the verge, of bankruptcy.

67.     Thus, Plaintiffs are entitled to payment of the value of all of Defendants' retained benefits supplied by Plaintiffs.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for certification of this Complaint as collective action pursuant to the FLSA and entry of judgment in their favor and against Defendants as follows:

1.      Plaintiffs request payment of all unpaid minimum wages, totaling an amount not less than $300,000;

2.      Plaintiffs request the payment of an additional equal amount as liquidated damages;

3.      Plaintiffs request the payment of all attorneys' fees and costs;

4.      Plaintiffs request pre and post-judgment interest at the highest rate allowable under law;

5.      Plaintiffs request the rescission or voiding of their lease agreements, warranty agreements and promissory notes along with restitution;

6.      Plaintiffs request restitution as Defendants have been unjustly enriched;

7.      Plaintiffs request the payment of the value of all benefits conferred upon Defendants; and

8.      Plaintiffs request any and all other legal or equitable relief deemed appropriate by the Court.

### DEMAND FOR TRIAL BY JURY

Plaintiffs request a jury trial on all claims described herein, and as may be amended.

Respectfully submitted this 6th day of September, 2016.


                                    /s/John R. Crone
                                    John R. Crone
                                    CO Bar No. 48284
                                    ANDRUS WAGSTAFF PC
                                    7171 West Alaska Drive
                                    Lakewood, Colorado 80226

Telephone: (303) 376-6360
John.Crone@andruswagstaff.com
*Attorneys for Plaintiffs*