IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-02242-RM-KLM

FRANKLIN MERRILL; LORA LEE;
BRENT LEE; ANTHONY GLOVER;
KEITH HERRING; ANTHONY DENNIS;
LARRY JURCAK; SAMI NASR;
JENNIFER THOMAS; ROBERT THOMAS;
RONALD DENNIS; JESSEE FISHER;
RONALD LACY; JAMES NEWBERRY;
TAMI POTIRALA; and CRAIG WILLIAMS;
all individuals,

    Plaintiffs,

v.

PATHWAY LEASING LLC, a Colorado
Limited liability company;
MATTHEW HARRIS, an individual;
TRANSFORCE, INC., a Colorado corporation;
XPO LOGISTICS TRUCKLOAD, INC., a
Missouri corporation registered to conduct business
In Colorado; and
CON-WAY TRUCKLOAD INC., a Missouri
Corporation registered to conduct business in Colorado,

    Defendants.

## DEFENDANTS XPO LOGISTICS TRUCKLOAD, INC., TRANSFORCE, INC., AND CON-WAY TRUCKLOAD, INC.'S MOTION TO DISMISS AND COMPEL INDIVIDUAL ARBITRATIONS

Defendants XPO Logistics Truckload, Inc. ("XPO"), TransForce, Inc. ("TransForce"), and Con-way Truckload, Inc. ("Con-way") (collectively "Defendants")[1], by and through their

---

[1] Plaintiffs improperly named TransForce, Inc. as a defendant in this litigation on an unsupported theory that it was a "joint employer" of Plaintiffs. (Dkt. # 54, Sec. Am. Compl. ¶ 2.) TransForce

counsel, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., hereby file this Motion to Dismiss Plaintiffs' Second Amended Complaint and Compel Individual Arbitrations pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*

## I.   INTRODUCTION

By filing this lawsuit, Plaintiffs[2] attempt to avoid their clear and freely negotiated agreement and obligation to arbitrate all claims arising out of or relating to their relationship with Defendants. Plaintiffs allege Defendants improperly characterized them and other putative class members as independent contractors and denied them minimum wage in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). The individual agreements that created and govern the relationships between Defendants and each Plaintiff—indeed, the very relationships whose characterizations are now being challenged in this lawsuit—include a mutually-binding and mandatory agreement to *individually* arbitrate all claims where the aggregate amount in controversy exceeds $25,000. Federal and state law indisputably require the enforcement of such agreements according to their terms, which in this case, means

---

is the parent company of Contract Freighters, Inc. f/k/a XPO Logistics Truckload, Inc. f/k/a Con-way Truckload, Inc. However, XPO and Con-way are the entities who engaged and paid Plaintiffs as independent contractors and with whom Plaintiffs entered into Contract Hauling Agreements. For purposes of this Motion *only*, TransForce, XPO, and Con-way are referred to collectively as "Defendants."

[2] As used herein, the term "Plaintiffs" refers to named Plaintiffs Franklin Merrill, Lora Lee, Brent Lee, Anthony Glover, Keith Herring, Anthony Dennis, Larry Jurcak, Sami Nasr, Jennifer Thomas, Robert Thomas, Ronald Dennis, Ronald Lacy, James Newberry, Tami Potirala, and Craig Williams. Named plaintiff Jesse Fisher, however, is not a proper plaintiff as to the claims alleged against Defendants because he never entered into any contract with, or provided any services for, XPO, Con-way, TransForce, Contract Freighters, or any other entity affiliated with these Defendants. (Ex. A, Declaration of Barbara Haslip ("Haslip Dec."), ¶ 10.)

2

individual, not collective, arbitration.  Accordingly, this Court should enforce the parties' agreements as written, dismiss Plaintiffs' Second Amended Complaint as to Defendants XPO, Con-way, and TransForce, and compel Plaintiffs to participate in arbitration on an individual basis.

## II.   STATEMENT OF FACTS

**A.   The Parties.**

Defendants are logistics and transportation companies that provide, among other things, for-hire motor carrier services.  (*See* Dkt. # 54, ¶¶ 2, 31-33.)  Plaintiffs, and those they seek to represent on a collective basis, contracted with XPO or Con-way to transport goods in interstate commerce.[3]  (*See* Dkt. # 54, ¶¶ 2-3.)  Each Plaintiff's relationship with XPO and/or Con-way was created and is governed by a Contractor Hauling Agreement (the "Agreement(s)"), which sets forth each party's rights and obligations under the contract.  (Haslip Dec., ¶ 7; Ex. B, Plaintiffs' Contractor Hauling Agreements.)  Pursuant to the Agreements, Plaintiffs agreed they were "independent contractor(s) and not an employee" of XPO and/or Con-way.  (*See* Ex. B, Addendum VI, ¶ 1; *see also* Ex. B, ¶ 3, "It is the intent of the Parties to this Agreement that CONTRACTOR shall be and remain an independent contractor . . . ." (emphasis in original).)

**B.   Plaintiffs' Arbitration Agreements.**

Plaintiffs' Agreements specifically require them to arbitrate all claims <u>on an individual basis</u> where the aggregate amount in controversy exceeds $25,000:

---

[3]Although Plaintiffs formally entered into the Agreements with either XPO or Con-way, the Agreements expressly apply to "any successor thereto."  (Ex. B, p. 1.)  As to the relationship between these entities, XPO acquired Con-way in 2015, and TransForce subsequently acquired XPO in 2016.  XPO is now known as Contract Freighters, Inc.  (Haslip Dec. ¶ 4.)

3

> The Parties further agree to submit all claims or disputes where the aggregate amount in controversy exceeds $25,000 exclusively to binding arbitration pursuant to the Missouri Uniform Arbitration Act, RSMo. chapter 435 and the procedures herein. <u>The Parties agree that no consolidated or class arbitration shall be conducted.</u> Unless both Parties agree otherwise in writing, the arbitration hearing shall be heard in Joplin, Missouri, before a single arbitrator who shall be an "AV" rated attorney with at least 15 years' experience with business and commercial matters or disputes, to be selected by mutual agreement of the Parties, or by the Circuit Court of Jasper County, Missouri, if the Parties cannot agree. Claims for $25,000 or less in the aggregate, and any other matter, claim or dispute that the Parties mutually agree not to submit to binding arbitration, shall be determined exclusively in the Circuit Court of Jasper County, Missouri, unless the Parties agree in writing to a different forum . . . The prevailing Party in any arbitration or court proceeding hereunder also may recover reasonable attorney fees and legal expenses as part of any award.

(Ex. B, ¶ 28 (emphasis added).)

**C.     Plaintiffs' Claims.**

Despite their explicit agreement to individually arbitrate their claims, Plaintiffs filed this lawsuit as a putative collective action alleging Defendants failed to pay them and other similarly situated individuals minimum wage in violation of the FLSA. (Dkt. # 54, Second Am. Compl.) The crux of Plaintiffs' lawsuit is the allegation that they performed hauling services under the Agreements in the capacity of employees rather than independent contractors. (*Id.* at ¶¶ 36-50.) Plaintiffs also allege Defendants unlawfully retaliated against them and other putative class members for joining or intending to join this lawsuit. (*Id.* at ¶¶ 83-86.) As a result, Plaintiffs request payment of unpaid minimum wages allegedly totaling at least $500,000, as well as liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs. (*Id.* at "Prayer for Relief.") Therefore, each individual Plaintiff's claim, when considered alone, seeks far more than $25,000 when attorneys' fees, costs, and potential liquidated damages are

4

included.

### III.     LAW AND ARGUMENT

Plaintiffs' claims against Defendants should be dismissed and submitted to individual arbitrations for three reasons.  First, the FAA requires the parties to arbitrate Plaintiffs' claims pursuant to their Agreements.  Second, the arbitration provision in Plaintiffs' Agreements is valid and enforceable under the FAA and applicable state law.  Third, Plaintiffs' claims (including their putative FLSA collective action) fall within the scope of the arbitration agreement—the plain language of which permits only *individual* arbitration.

**A.     The FAA Establishes a Clear Directive in Favor of Arbitration.**

The FAA and its interpretive case law embody a pro arbitration policy.  *See, e.g., Sanchez v. Nitro-Life Technologies, LLC*, 762 F.3d 1139 (10th Cir. 2014) (holding FLSA wage claims fell within the scope of the arbitration clause and recognizing "the FAA and common law have created a presumption in favor of arbitration"); *Bechtold v. Santander Consumer USA, Inc.*, 2015 WL 5455617, at *1 (D. Colo. July 30, 2015 (Matsch, J.) ("The provisions of the Federal Arbitration Act manifest a liberal federal policy favoring arbitration.") (internal quotations omitted).[4]  Any doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration, and Plaintiffs bear "the burden of proving that the claims at issue are unsuitable for arbitration."  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (recognizing the "liberal federal policy favoring arbitration agreements").

Courts consistently adhere to the strong federal policy favoring arbitration.  *See generally Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Mitsubishi Motors Corp. v.*

---

[4] A copy of all unreported cases are attached hereto as Ex. C.

5

*Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 625-26 (1985); *Peterson v. Shearson/Am. Exp., Inc.,* 849 F.2d 464, 465 (10th Cir. 1988).  Section 2 of the FAA articulates federal policy in favor of arbitration:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of a contract, transaction, or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*See* 9 U.S.C. § 2; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983) (The FAA reflects "a liberal federal policy favoring arbitration agreements").  "This presumption in favor of arbitrability also applies where a party bound by an arbitration agreement raises claims founded on statutory rights."  *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 797 (10th Cir. 1995).

The FAA's provisions are mandatory, and a court must compel arbitration when, as in this case, a valid agreement exists.  *See* 9 U.S.C. §§ 3-4; *see also City Stores, Inc. v. Adams*, 532 U.S. 105, 106 (2001) (finding aside from a narrow class of workers, the FAA covers all contracts of employment and the Act may be used to compel arbitration of employment-related claims).

**B.  Plaintiffs' Agreements Are Part of a Contract or Transaction Involving Interstate Commerce and Are Valid under General Contract Principles.**

An arbitration agreement is enforceable under the FAA if it is (1) part of a contract or transaction involving interstate commerce and (2) valid under general principles of contract law. *See* 9 U.S.C. §§ 1-2; *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1286 (10th Cir. 1997) ("[t]here is a clear federal policy of requiring arbitration unless the agreement to arbitrate is not

part of a contract evidencing interstate commerce or is revocable upon such grounds as exist at law or in equity for the revocation of any contract.") (internal citations omitted). The Agreements in this case satisfy each of these elements and are enforceable under the FAA.

### 1.     The FAA governs Plaintiffs' Agreements.

The FAA's reference to interstate commerce reflects Congressional intent to extend FAA coverage to the limits of federal power under the Commerce Clause. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274 (1995). Accordingly, the determination of whether a transaction or contract "involves" interstate commerce requires an expansive construction of the term to effectuate Congress's goal of encouraging alternative dispute resolution mechanisms. *Id*. A matter "involves" commerce under the FAA if it simply "affects" commerce − a standard commonly applied by courts to situations in which it is clear Congress intended to exercise its Commerce Clause powers to the fullest extent. *Id*. at 274-76.

This prong of the analysis is simple in this case because Plaintiffs admit their contractual relationship with Defendants involves interstate commerce. Plaintiffs admit they contracted with XPO and/or Con-way to "move goods in commerce." (Dkt. # 54, ¶ 2.) In fact, their claims asserting violations of the FLSA presume that the defendants in this lawsuit engage in interstate commerce for the FLSA to apply to them. *See* 29 U.S.C. § 207(a)(1) (requiring overtime to an employee who is "engaged in commerce . . . or . . . employed in an enterprise engaged in commerce"). Because the services Plaintiffs provided under the Agreements directly involved the movement of goods through commerce and Plaintiffs' claims require that interstate commerce is at issue, the Agreements are unquestionably part of a contract involving interstate commerce and are valid, enforceable, and sufficient to compel dismissal of this action against

XPO, Con-way, and TransForce so Plaintiffs' claims can be arbitrated pursuant to the Agreements.

### 2. Plaintiffs' Agreements are enforceable under Missouri contract law.

The Agreements meet all of the elements of a valid and enforceable contract under Missouri[5] law and are therefore enforceable pursuant to the FAA. After all, their validity is determined by reference to general principles of contract law.[6] "We look to state law principles of contract formation to tell us whether an agreement to arbitrate has been reached." *Seatex*, 126 F.3d at 1287 (citing *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.")). Although state law determines the enforceability of the Agreements, the analysis under state law must be viewed through the lens of the FAA's pro-arbitration stance. *See Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 334 (10th Cir. 1993) ("The effect of [section 2 of the FAA] is to create

---

[5] The Agreements were entered into in Missouri and contain the following choice-of-law provision: "[A]ll disputes and matters arising out of or relating hereto, including any allegation of a tort, or breach of this Agreement, or of violations of the requirements of any applicable governmental authorities, whether local, state, federal or foreign . . . shall be governed by Missouri law . . . except to the extent that federal law supersedes Missouri law or otherwise applies." (Ex. B, ¶ 28.) Thus, on issues of contract formation, this Court should look to Missouri's state law (which is similar to Colorado law in all material respects).

[6] The Supreme Court reaffirmed its continued deference to arbitration agreements by holding the FAA makes agreements to arbitrate valid, irrevocable, and enforceable contracts, save such grounds as exist in law or in equity for the revocation of any contract. *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) (*citing* 9 U.S.C. § 2). Arbitration agreements are on equal footing with all other contracts and must be enforced according to their terms. *Id*. at 1745-46. Defenses to an arbitration agreement are those that exist for any contract; no special defenses exist to an arbitration agreement. *Id*. at 1746. In fact, even general contract provisions that would conflict with the FAA's favoritism of arbitration agreements cannot be applied to defeat arbitration. *Id*. at 1747-48.

8

a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act . . .  Therefore, for example, in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration.") (internal quotations omitted).

The basic elements of a contract under Missouri law are offer, acceptance, and consideration, and the Agreements meet all three elements. *See Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. 1988).

      a.    <u>Defendants offered arbitration to Plaintiffs as part of the original offer to enter into a contractual relationship.</u>

An "offer" requires "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *See Agri Process Innovations, Inc. v. Envirotrol, Inc.*, 338 S.W.3d 381, 390 (Mo. Ct. App. W.D. 2011).  Defendants manifested their willingness to enter into a bargain with Plaintiffs when they presented Plaintiffs with the Agreements to establish their independent contractor relationship.  The Agreements explained that both Defendants and Plaintiffs would mutually agree to submit any disputes where the amount in controversy exceeds $25,000 to binding arbitration.  By presenting the Agreement to each Plaintiff, Defendants manifested a willingness to enter into a mutually-binding agreement under which the parties would submit covered disputes to final and binding arbitration.

      b.    <u>Plaintiffs accepted Defendants' offer.</u>

"Acceptance" of an offer is "a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." *Walker v. Rogers*, 182 S.W.3d 761, 768

9

(Mo. Ct. App. W.D. 2006) (internal citation omitted). By signing the Agreement, each Plaintiff accepted Defendants' offer, indicating he/she would be bound by the terms of the Agreement. By affixing their signatures, Plaintiffs unambiguously acknowledged they accepted Defendants' offer of mutual arbitration as the method of resolving disputes exceeding $25,000. Indeed, just above the signature lines, the Agreements reiterate Plaintiffs' acceptance to submit covered claims to arbitration by providing:

> **THIS AGREEMENT CONTAINS AN INDEMNITY PROVISION AND A BINDING ARBITRATION PROVISION THAT MAY BE ENFORCED BY THE PARTIES**

(Ex. B, p. 16 (emphasis in original).) Therefore, Plaintiffs accepted Defendants' offer under Missouri law when they executed the Agreements.

      c.     The Agreements are supported by consideration.

Consideration generally consists of "a promise to do or refrain from doing something or the transfer or giving up of something of value to the other party." *State v. Nationwide Life Ins. Co.*, 340 S.W.3d 161, 190 (Mo. Ct. App. W.D. 2011). "It is an elemental principle of contract law that a contract that contains mutual promises imposing some legal duty or liability on each promisor is supported by sufficient consideration to form a valid, enforceable contract." *Id.* (internal quotations omitted). In this case, the Agreements reveal an unambiguous intent that Defendants be bound to the same extent as Plaintiffs in submitting disputes arising out of the parties' relationship to arbitration. (Ex. B, ¶ 28 ("The Parties further agree to submit all claims or disputes . . . exclusively to binding arbitration . . . .").) This *mutual* promise binding both Defendants and Plaintiffs to submit covered disputes to arbitration instead of the court system— regardless of which party asserts the claim—constitutes sufficient consideration. *See, e.g.,*

*Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 25 (Mo. Ct. App. W.D. 2008) (holding consideration satisfied by mutual promises to do or refrain from doing something); *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 438 (Mo. Ct. App. W.D. 2010) ("[I]f a contract contains mutual promises, such that a legal duty or liability is imposed on each party as a promisor to the other party as a promisee, the contract is a bilateral contract supported by sufficient consideration.").

The Agreements' arbitration provision is mutually-binding, evidencing sufficient consideration to support a contract. Furthermore, Defendants' agreement to enter into a contractual relationship with Plaintiffs provided adequate consideration for the arbitration provisions because no prior relationship existed between the parties. Therefore, the Agreements satisfy all of the elements required to constitute valid and enforceable contracts under Missouri law.

**C.     Plaintiffs' Collective Action Claims Fall within the Scope of the Arbitration Agreements, Which Expressly Provide Only for *Individual* Arbitration.**

The Agreements require Plaintiffs to arbitrate any and all claims arising between them and Defendants <u>on an individual basis</u> where the aggregate amount in controversy exceeds $25,000. (Ex. B, ¶ 28.) First, because Plaintiffs allege they are entitled to at least $500,000 in unpaid minimum wages, as well as liquidated damages, attorneys' fees, and pre- and post-judgment interest, there can be no question that the amount in controversy exceeds $25,000—the only trigger for mandatory and binding arbitration. (Dkt. # 54, "Prayer for Relief.) Thus, Plaintiffs' claims fall within the scope of the arbitration clause.

Additionally, Plaintiffs' agreement to forego their rights to any representative action and arbitrate solely on an individual basis is fully enforceable and should be enforced as written.

11

Consistent with the FAA's text, "courts must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom [the parties] choose to arbitrate their disputes." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013). Importantly, the "overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *See AT&T Mobility*, 131 S. Ct. at 1751 (holding class action waiver in commercial contract was valid); *see also Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 682–83 (2010) (recognizing that "the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms'" and that parties "may specify with whom they choose to arbitrate their disputes").

The Tenth Circuit has held that a provision in an arbitration agreement waiving an individual's ability to assert FLSA claims in federal court is enforceable under the FAA. *See Sanchez*, 762 F.3d at 1147-48 (holding arbitration clause in a confidentiality/non-compete agreement applied to the plaintiff's FLSA putative collective action claims); *see also Hickey v. Brinker Int'l Payroll, Co., L.P.*, 2014 WL 622883, at *5 (D. Colo. Feb. 18, 2014) (Blackburn, J.) (dismissing FLSA putative collective action claims due to arbitration agreement); *Lynn v. Gen. Elec. Co.*, 407 F. Supp. 2d 1257, 1258 (D. Kan. 2006) (staying action pending arbitration of FLSA claims). Likewise, courts in other circuits routinely compel individual arbitration in putative FLSA collective actions, consistent with "more than two decades of pro-arbitration Supreme Court precedent." *See Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1054 (8th Cir. 2013) ("[A]rbitration agreements containing class waivers are enforceable in FLSA cases."); *see also Walthour v. Chipio Windshield Repair, LLC,* 745 F.3d 1326 (11th Cir. 2014) (holding arbitration

provision waiving an employee's ability to bring a collective action under the FLSA is enforceable under the FAA); *Sutherland v. Ernst & Young, LLP*, 726 F.3d 290, 296-00 (2d Cir. 2013) (same); *Vilches v. Travelers Cos., Inc.*, 413 F. App'x 487, 494 n.4 (3d Cir. 2011) (same).[7] Indeed, "nothing in either the text or the legislative history of the FLSA . . . indicates a congressional intent to bar employees from agreeing to arbitrate FLSA claims individually, nor is there an inherent conflict between the FLSA and the FAA." *Owen*, 702 F.3d at 1052.

Plaintiffs explicitly agreed to forego their rights to any representative or collective action and agreed only to individual arbitration. Because the Agreements preclude anything but individualized arbitration, the Court should enforce the Agreements as written, dismiss Plaintiffs' claims, and compel Plaintiffs to participate in arbitration on an individual basis.

### D. The Court Should Dismiss Plaintiffs' Second Amended Complaint against XPO, Con-way, and TransForce with Prejudice.

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Defendants are entitled to dismissal with prejudice if Plaintiffs' claims are subject to arbitration. *See* Fed. R. Civ. P. 12(b)(1). Because all of Plaintiffs' claims as alleged against XPO, Con-way and TransForce are covered by the Agreements, and because arbitration pursuant to the Agreement is final and binding, and not subject to appeal before this Court, there is no reason for this Court to assert jurisdiction over this particular lawsuit as it pertains to Defendants. *See, e.g.*, *Armijo*, 72 F.3d at 797 (upholding district court's grant of motion to compel arbitration and dismiss case); *Encore*

---

[7] On November 29, 2016, the United States District for the Northern District of Georgia dismissed the plaintiff delivery driver's putative FLSA collective action claims and compelled arbitration pursuant to an almost identical arbitration provision as the one contained in Plaintiffs' Agreements with XPO and/or Con-way. *See* Ex. D, *Gates v. TF Final Mile, LLC,* Order Granting Defendants' Motion to Dismiss and Compel Arbitration (recognizing claims brought under the FLSA may be the subject of arbitration agreements and are enforceable under the FAA).

13

*Prods., Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101, 1111 (D. Colo. 1999) (dismissing claims pursuant to Rule 12(b)(1) for lack of jurisdiction when claims for relief were subject to arbitration); *Lee v. Grandcor Med. Sys., Inc.*, 702 F. Supp. 252, 253 (D. Colo. 1988) ("Under Colorado law, a valid and unwaived arbitration clause deprives the court of subject matter jurisdiction until the dispute has been submitted to arbitration."); *Roddy v. Rosewood Res., Inc.*, 2013 WL 3713915, at *5 (D. Colo. July 16, 2013) (Jackson, J.) (dismissing claims pursuant to Rules 12(b)(1) and 12(b)(6) on the grounds that they were subject to arbitration); *Black & Veatch Int'l Co. v. Wartsila NSD N. Am., Inc.*, 1998 WL 953966 (D. Kan. 1998) (dismissing claim pursuant to Rule 12(b)(6) on the grounds that it was subject to arbitration pursuant to 9 U.S.C. § 201). Therefore, this Court should dismiss Plaintiffs' Second Amended Complaint as alleged against Defendants in its entirety with prejudice.

## IV.   CONCLUSION

For all the foregoing reasons, Defendants respectfully request this Court enter an Order dismissing this action as to Defendants XPO Logistics Truckload, Inc., TransForce, Inc., and Con-way Truckload, Inc. and requiring Plaintiffs to submit their claims against these defendants to arbitration on an individualized basis if they intend to continue to pursue them.

Respectfully submitted this 10th day of January, 2017.

                                                  OGLETREE, DEAKINS, NASH, SMOAK &
                                                  STEWART, P.C.

                                                  *s/ Austin E. Smith*
                                                  Austin E. Smith
                                                  Michelle B. Muhleisen
                                                  1700 Lincoln Street, Suite 4650
                                                  Denver, CO  80203
                                                  Telephone:  303.764.6800
                                                  Facsimile:  303.831.9246
                                                  austin.smith@ogletreedeakins.com
                                                  michelle.muhleisen@ogletreedeakins.com

                                                  *Attorneys for Defendants*
                                                  *TransForce, Inc., XPO Logistics Truckload,*
                                                  *Inc., Con-way Truckload, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of January, 2017, I electronically filed the foregoing **DEFENDANTS XPO LOGISTICS TRUCKLOAD, INC., TRANSFORCE, INC., AND CON-WAY TRUCKLOAD, INC.'S MOTION TO DISMISS AND COMPEL INDIVIDUAL ARBITRATION** with the Clerk of Court using the CM/ECF system and served a copy via email on the following counsel of record:

John R. Crone, Esq.
John.Crone@andruswagstaff.com

*Attorneys for Plaintiffs*


Mark B. Wiletsky, Esq.
MBWiletsky@hollandhart.com

Robert M. Thomas, Esq.
RMThomas@hollandhart.com

*Attorneys for Defendants and Counterclaimant
Pathway Leasing, LLC and Matthew Harris*


*s/ Linda R. Kerman*
Linda R. Kerman, Paralegal
