IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-02242-KLM

FRANKLIN MERRILL, *et al.*;

all individuals,

      Plaintiffs,

v.

PATHWAY LEASING LLC, a Colorado limited liability company;
MATTHEW HARRIS, an individual;

      Defendants.

---

## PATHWAY DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants Pathway Leasing LLC ("Pathway") and Matthew Harris (collectively, "Pathway Defendants") move for partial summary judgment on Plaintiffs' Fair Labor Standards Act ("FLSA") claims (Counts I and V) for three reasons: (1) Pathway Defendants are not, as a matter of law, "joint employers" with XPO[1]; (2) Plaintiffs are independent contractors, not "employees," under the FLSA; and (3) Plaintiffs have no evidence to support their FLSA retaliation claims.

### I.      INTRODUCTION

Plaintiffs are long-haul truck drivers who transport freight for XPO's customers pursuant to independent contractor agreements with XPO. They seek to hold their truck lessor, Pathway,

---

[1] "XPO" refers to former Defendants TransForce, Inc., XPO Logistics Truckload, Inc., and Conway Truckload Inc., who engaged Plaintiffs as independent contractors in their capacity as over-the-road truck drivers to transport goods for XPO's customers. *See* Dkt. 164 (dismissing XPO).

liable for minimum-wage violations, even though they hauled no freight and performed no services for Pathway, and even though Pathway received no money for their services and had no control over their day-to-day activities. Plaintiffs could—and some did—hire their own drivers to perform their services for XPO. Moreover, several Plaintiffs completed their leases or purchased their trucks, thereby ending their relationship with Pathway. Pathway could not and did not "fire" Plaintiffs, and Plaintiffs who purchased their trucks were free to haul freight for whomever they wished.

Pathway's alleged status as an "employer" cannot turn on the mere fact that carriers transmitted funds to Pathway, and then Pathway made deductions required by the lease before remitting the remainder to Plaintiffs. If that were the case, entities could avoid "employer" status merely by having the money flow directly to the drivers, even though the relationship between the drivers and their equipment lessor otherwise remained the same. As shown below, and in Pathway Defendants' response to Plaintiffs' summary judgment motion, there is no basis on which a reasonable jury could find Pathway Defendants liable as an employer under the FLSA.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

The following material facts are undisputed for the purposes of this motion:

### A.   Pathway Defendants Are Not "Joint Employers" Under the FLSA.

1.      Pathway Defendants hereby incorporate by reference the undisputed facts set forth in their separately filed response to Plaintiffs' motion for partial summary judgment (hereinafter, "Response"), as well as the exhibits attached in support of the Response.

**B.      Plaintiffs Were Entrepreneurs Who Independently Contracted with XPO.**

2.      Almost all of the Plaintiffs were previously employed as "company drivers" (i.e., carrier employees) before electing to become independent contractors (or "owner-operators") for XPO.   Ard Dep., Ex. 1[2] at 9:20-10:19;  Austin Dep., Ex. 2 at 29:21-23; 30:22-32:8; Hollingsworth Dep., Ex. 3 at 8:14-16, 13:6-9; Kortman Dep., Ex. 4 at 12:15-23: Lacy Dep., Ex. 5 at 9:8-17; Merrill Dep., Ex. 6 at 8:7-19; Nasr Dep., Ex. 7 at 16:18-21, 17:5-20; Van Der Kamp Dep., Ex. 8 at 10:15-12:21.

3.      Before deciding to become independent contractors, Plaintiffs conducted or had the opportunity to conduct their own independent evaluations of (1) whether to lease or purchase their trucks, and (2) whether to lease their trucks from Pathway or other truck leasing companies, including by calling other companies and comparing their rates.  Ex. 2 at 40:14-44:19; Dennis Dep., Ex. 9 at 12:17-13:21 ("I called both leasing companies to distinct [sic] between the two."); Ex. 5 at 10:24-11:3, 11:12-18; Ex. 6 at 11:10-13:16; Ex. 7 at 41:18-42:5, 44:21-44:18 (comparing rates of Lone Mountain to Pathway).

4.      In some cases, Pathway provided the best economic option to drivers who wanted to become independent contractors.  Ex. 9 at 116:24-117:9; Ex. 6 at 11:18-12:1; Ex. 7 at 42:10-15; Ex. 8 at 17:12-21.  Contrary to Plaintiffs' allegations (Dkt. 82, at p. 13 ¶ 43 and p. 19 ¶ 61), not all Plaintiffs who leased from Pathway had poor credit.  *See, e.g.*, Ex. 2 at 38:9-18.

5.      XPO has a fleet of over 2000 company drivers and approximately 500 independent contractor drivers.  Creed Dep., Ex. 10 at 20:8-25; Hunt Dep. (Vol. 1), Ex. 11 at 39:20-40:1.

---

[2] Appended hereto is an Index of all exhibits attached in support of this Cross-Motion.

6.     As independent contractors, many of the Plaintiffs set up and registered their own limited liability companies.  *See*, *e.g.*, Ex. 2 at 93:16-25 ("Cherokee Nomad Express LLC"); Doc. NasrS_PlaintiffRecords_00204, Ex. 12 ("Nasr Transportation LLC"); Stewart Dep., Ex. 13 at 40:1-10 (in New York, owner-operators required to form their own LLCs); Williams Dep., Ex. 14 at 18:7-8.  All Plaintiffs filed their own taxes as independent contractors, and those with their own corporate entity filed taxes for such entities.  *See*, *e.g.*, Ex. 2 at 93:13-94:4; Ex. 7 at 122:1-123:16.

7.     As independent contractors, Plaintiffs entered Contract Hauling Agreements with XPO (Response at Ex. 6) setting forth how much they would be paid per mile.  Response, Ex. 6 at §§ 18-21; Ex. 7 at 101:20-25, Ex. 8 at 37:1-7.  Pathway had no involvement in developing XPO's Contract Hauling Agreements.  Response, Ex. 4 at ¶ 5.

8.     Under their Contract Hauling Agreements, Plaintiffs do not have to do the work themselves; they may hire their own drivers or drive as a "team".  Response, Ex. 6 at §§ 7.A, 7.I, 7.N, 19-20.  In such cases, Plaintiffs and those similarly situated bore the responsibility for "hiring, setting the wages, hours and working conditions and adjusting the grievances of, supervising, training, disciplining and firing all drivers, driver's helpers and other workers necessary for the performance of [Plaintiffs'] obligations under the terms of this Agreement." *Id.* at §7.I; Ex. 3 at 57:19-59:16.

9.     Moreover, the Contract Hauling Agreements provide that it is Plaintiffs' responsibility to "determine the means and methods of the performance of all transportation services undertaken by CONTRACTOR under the terms of this Agreement." Response, Ex. 6 at

4

§ 6.  Plaintiffs were responsible for "selecting, purchasing, leasing, and financing the Tractors." *Id*. at §7.D.  Plaintiffs were also responsible for "selecting all routes." Response, Ex. 6 at § 7.G.

10.    As independent contractors, Plaintiffs had discretion to determine the manner, means, and conditions by which they delivered services to XPO in ways that differed fundamentally from company drivers.  As set forth in detail in the Response, Plaintiffs could elect to drive alone or as part of a team, could and did hire their own independent contractors to work for them, were compensated at a higher rate of pay per mile driven, had the ability to decline loads, request assignment only in particular locations, and retained discretion on how they transported goods (including their own routes and fueling locations) and when and how long to take time off.  *See* Response § II at ¶¶ 8, 34-37.

11.    Plaintiffs also could work with carriers other than XPO, and many did so.  *See id*. at ¶ 38.

12.    Some of the Plaintiffs purchased the trucks they were leasing from Pathway and continued to operate as independent-contractor drivers for XPO.  Ex. 1 at 24:20-26:4; Ex. 4 at 48:12-22; 153:12-21; Ex. 5 at 14:15-24; Ex. 8 at 26:13-23 (noting that the lease option offered the opportunity to pay off the truck and own it outright after a period of time).  When the truck was purchased, the terms and conditions of the relationship between XPO and Plaintiffs did not change.  Ex. 1 at 97:23-98:9; Ex. 4 at 48:16-49:25.

13.    At least one of the Plaintiffs who had purchased the tractor from Pathway considered himself an independent contractor, not an employee, of XPO.  Ex. 4 at 49:15-50:11.

14.     XPO made no investment in the trucks used by Plaintiffs; indeed, part of the business rationale for using lessees as opposed to company drivers was that XPO did not have to invest money in purchasing or maintaining that equipment.  Ex. 11 at 39:2-16.

15.     Melinda Creed, operations supervisor for XPO, oversees a staff of nine fleet supervisors in charge of, *inter alia*, dispatching drivers on assignments, and a staff of independent-contractor specialists and an "IC planner" responsible for coordinating XPO's orientation for owner-operators.  Ex. 10 at 10:1-14:9.  XPO's staff member, Gretchen Jackson, is responsible for independent contractor driver recruiting.  Jackson Dep., Ex. 15 at 8:17-22.

16.     Company drivers must follow a "driver hand book" that does not apply to owner-operators, who are subject only to their Contract Hauling Agreements.  Ex. 10 at 19:2-15; 31:9-12.

17.     XPO pays independent contractors $.97  per mile plus a fuel surcharge.  Ex. 10 at 21:23-22:4.  Company drivers are paid a differential per mile rate that varies by their experience level, and they are eligible for employee benefits and a safety bonus.  Ex. 10 at 22:5-23:2; Ex. 11 at 42:8-43:8; Killinger Dep., Ex. 16 at 43:14-44:18.  Also, company drivers are paid bi-weekly whereas contractors are paid weekly.  Ex. 10 at 20:4-7.

18.     Unlike company drivers, solo independent contractors receive additional pay of $0.03 per mile from XPO for trips above 11,000 miles; XPO pays independent contractors driving in a team an additional $0.06 per mile for trips above 18,000 miles. Ex. 10 at 32:17-25.

19.     Like any small business owner, Plaintiffs "had to manage the amount of money going out versus the money coming in.  A company driver doesn't have that worry.  They just drive the truck and they get paid a flat rate per mile based on tenure. And they don't have to

worry about whatever money they are spending for fuel or anything like that."  Hunt Dep. (Vol. 2), Ex. 17 at 215:17-217:4.

20.     Plaintiff Lacy testified, "So there's a difference from being a contractor and being a company driver, big difference."   Ex. 5 at 94:12-95:11 (also testifying that an independent contractor has to manage truck-related expenses, such as maintenance costs, but that a company driver "got to worry about nothing" and that "you assume no responsibilities as a company driver.  As an owner-operator, you assume all responsibility.").

21.     Plaintiff Nasr testified, "Once you've been an owner/operator, you can't have people telling you where to go, when to go, and how long to stay.  I said no.  I need to find me another truck." Ex. 7 at 42:2-5.  Plaintiff Garcia testified similarly: "And I say, 'I'm glad I'm an owner. I work my own route.' Because that's part of the freedom. I can fuel where I want because I pay for the fuel, and I can route myself where I want." Garcia Dep., Ex. 18 at 134:24-135:2.

**C.     Plaintiffs Admit There Is No Evidence To Support Their Retaliation Claims.**

22.     Plaintiffs allege that Pathway retaliated against them for joining in this lawsuit. Dkt. 82 (Fourth Amended Complaint), p. 25 at ¶¶ 87-91.

23.     Discovery has now made clear, however, that Pathway did not retaliate against Plaintiffs.   *See* Ex. 1 at 98:11-16; Ex. 5 at 115:17-20; Ex. 6 at 72:19-73:1; Ex. 4 at 126:12-131:23; Potirala Dep., Ex. 19 at 103:6-103:8; Ex. 3 at 177:25-179:4; Ex. 8 at 124:10-124:13.

24.     Plaintiff Danny Lloyd admits in his response to Pathway's Interrogatory No. 16, which seeks evidence of retaliation, as follows, "None." *See* Ex. 20.  Plaintiff Anthony Glover

responded similarly: "Had already parted ways with Pathway by the time the litigation started." *See* Ex. 21.

25.     Plaintiffs Jose Garcia, Julian LaFranks, Gerord Thomas, Eduardo Sustaita, Duane VanDerKamp, Paula Horion and Sami Nasr all provided no facts in their responses to Interrogatory No. 16 and then stated: "If responsive information becomes available in the course of discovery, I will supplement."  *See, e.g.*, Ex. 22 (Garcia only[3]).  They have not supplemented their responses.

## III.     ARGUMENT

### A.     Standard of Review.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" based on "materials in the record, including depositions, documents . . . or other materials."  Fed. R. Civ. P. 56(a) & 56(c)(1)(A).  The movant bears the initial burden of indicating the portions of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "If the movant meets this initial burden, the burden then shifts to the nonmovant to 'set forth specific facts' from which a rational trier of fact could find for the nonmovant." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (quoting Fed. R. Civ. P. 56(e)).

"Once the movant has made a showing that there is no genuine issue of material fact, the non-moving party 'may not rest upon the mere allegations or denials of the pleadings,' but 'must

---

[3] Undersigned counsel represents that the interrogatory responses Pathway Defendants have received from the six other Plaintiffs (Julian LaFranks, Gerord Thomas, Eduardo Sustaita, Duane VanDerKamp, Paula Horion and Sami Nasr) reflect the same or a substantially similar response.

set forth specific facts showing that there is a genuine issue for trial.'   To avoid summary judgment, the non-moving party must present more than a mere scintilla of evidence." *Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996) (citations and internal quotation omitted).   "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party*, 506 F.3d at 1309.

The evidence on which the Court relies to rule on a motion for summary judgment must be admissible. Fed. R. Civ. P. 56(e).   Conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.   *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 334 (1999).

Finally, the filing of cross motions does not mean that the material facts are undisputed, even if the parties focus on the same claim or defense.   *Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F.Supp.2d 1106, 1112 (D. Colo. 2002) (citations omitted).  Because the existence of a genuine dispute as to a material factual issue turns on the burden of proof, the standard of proof, and the adequacy of the evidence submitted, cross motions must be evaluated independently.  *Id*.

**B.      Pathway Defendants Are Not A "Joint Employer."**

For the reasons set forth in the Response, the Court should rule as a matter of law that Pathway is not a "joint employer" of Plaintiffs under the FLSA.  *See* Response at § IV(B)-(C).

Plaintiffs also have asserted claims against Defendant Matthew Harris individually as an alleged "joint employer" with XPO under the FLSA.  Dkt. 82, Counts I and V.  The Tenth Circuit considers numerous factors when determining individual liability under the FLSA, including whether the alleged individual employer has the power to hire and fire employees,

supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records. *Lopez v. Next Generation Constr. & Envtl., LLC*, No. 16-CV-00076-CMA-KLM, 2016 WL 6600243, at *4 (D. Colo. Nov. 8, 2016) (*citing Hodgson v. Okada*, 472 F.2d 965, 968–69 (10th Cir. 1973); *Mitchell v. Hertzke*, 234 F.2d 183, 189–90 (10th Cir. 1956)). Courts also look at the level of operational control the individual has over the company, including whether the individual is "involved in the day-to-day operation or ha[s] some direct responsibility for the supervision of the employee.'" *Koellhoffer v. Plotke–Giordani*, 858 F. Supp. 2d 1181, 1189–90 (D. Colo. 2012) (*quoting Alvarez Perez v. Sanford–Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008)).

Plaintiffs offer no evidence or argument supporting the conclusion that Mr. Harris, in his individual capacity, is somehow liable as an employer under the FLSA. *See* Dkt. 184-1. Moreover, since there is no evidence from which a reasonable factfinder could conclude that Pathway is a joint employer under the FLSA, there is similarly no evidence that Mr. Harris is a joint employer. *See* Response at § IV(B)-(C). Accordingly, the Court should dismiss the FLSA claims as alleged against both Mr. Harris and Pathway.

**C.    Plaintiffs Are Independent Contractors And Therefore Not Entitled To Relief As "Employees" Under The FLSA.[4]**

The FLSA contains "no definition that solves problems as to the limits of the employer-employee relationship." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947). The Supreme Court has thus held that "'economic reality,'" rather than "'technical concepts,'"

---

[4] Plaintiffs' FLSA claims against the Pathway Defendants fail if they are not, with XPO, a joint employer, *or* if Plaintiffs were properly classified as independent contractors.

provides "the test of employment" under the FLSA. *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 32 (1961).

"To determine whether an individual is an employee for purposes of the FLSA, the Court must apply the economic realities test, which focuses on 'whether the individual is economically dependent on the business to which he renders service.'" *Rojas v. Westco Framers, LLC*, 2016 WL 8540843, at *2 (D. Colo. June 14, 2016). There are six factors under the economic realities test, though no one factor is dispositive: (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business. *Mason v. Fantasy, LLC*, No. 13-CV-02020-RM-KLM, 2015 WL 4512327, at *8 (D. Colo. July 27, 2015) (*citing Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998)). The test is based on a totality of the circumstances. *Johnson v. Unified Gov't of Wyandotte Cnty./Kansas City, Kan.*, 371 F.3d 723, 729 (10th Cir. 2004) (citation omitted). Under the FLSA, Plaintiffs bear the initial burden of proving an employer-employee relationship. *Robertson v. Bd. of Cty. Comm'rs of Cty. of Morgan*, 78 F. Supp. 2d 1142, 1150 (D. Colo. 1999) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946)); *accord Perez v. Pinon Mgmt., Inc.*, No. 12-CV-00653-RM-MEH, 2014 WL 5596261, at *7 (D. Colo. Nov. 4, 2014).

Plaintiffs cannot meet their burden of proving they were employees, as opposed to independent contractors. Two of the six factors are identical to the factors discussed in the Response: degree of control and permanence of the relationship. To avoid duplicative argument

on these factors, Pathway Defendants respectfully submit that for the reasons set forth in the Response (at pp. 26-28), the Court should find as a matter of law that (1) Pathway did not exercise that degree of control necessary to justify construing Pathway as an employer of Plaintiffs under the FLSA, and (2) the relationship between Pathway and Plaintiffs was based on an agreement for a fixed term and therefore not permanent enough to consider it an employee-employer relationship.  As to the four other factors:

    **(1) The worker's opportunity for profit or loss.**  Plaintiffs retained significant opportunity for profit or loss.  On the profit side, Plaintiffs could maximize their earnings by driving as a team or by taking advantage of their right to decline loads.  Response § II at ¶¶ 8, 34-36.  Plaintiffs needed to use their independent judgment to determine whether or not a dispatch assignment offered by XPO would be profitable, based on factors such as traffic congestion, mountainous roads, fueling costs, wear and tear, and other considerations.  *Id.* at ¶¶ 34-36.  Indeed, some Plaintiffs complained they were making too little (i.e., incurring losses) whereas others indicated that they had to be judicious about accepting loads in order to ensure their profitability.  *Id.* at ¶ 34; Dkt. 82 at p.15 ¶ 49.  Company drivers could depend on a steady paycheck for each week they drove, but Plaintiffs had varying income depending on the routes they drove and the expenses they incurred to get the job done.  *Supra* § II at ¶¶ 17-20.  Because Plaintiffs had substantial opportunity for profit or loss, the second factor of the economic realities test weighs heavily in favor of independent contractor status.

    **(2) The worker's relative investment in the business.**  Plaintiffs took substantial risks by investing in their businesses as owner-operators.  They were responsible for financing maintenance and repairs to the trucks, fuel costs and surcharges, workers compensation and

business liability insurance, and tax and accounting services.   Response § II at ¶¶ 7, 27. Plaintiffs were required to secure a lease or otherwise procure the tractors necessary to perform their work for XPO.   *Supra* § II at ¶ 9.   Meanwhile, XPO made no investment in Plaintiffs' trucks, and Pathway made no investment in XPO's business.   *Supra* § II at ¶ 14; Response § II at ¶ 2.

"In traditional employer-employee settings, employees are not asked to take such risk upon themselves to ensure compensation." *Derolf v. Risinger Bros. Transfer*, 259 F. Supp. 3d 876, 883 (C.D. Ill. 2017).   Courts have thus held that where Plaintiffs have made significant capital investments in equipment and assumed substantial risk, they are more likely to be independent contractors than employees.   *Carrell v. Sunland Construction, Inc.*, 998 F.2d 330 (5th Cir. 1993) (welders were independent contractors partly because the welders invested an average of $15,000 each for welding equipment); *Donovan v. Brandel*, 736 F.2d 1114, 1118-19 (6th Cir. 1984) ("[t]he capital investment factor is most significant if it reveals that the worker performs a specialized service that requires a tool or application which he has mastered"); *Dole v. Snell*, 875 F.2d 802, 810 (10th Cir. 1989) ("[T]he 'investment' which must be considered as a factor is the amount of large capital expenditures, such as risk capital and capital investments, not negligible items, or labor itself.").   The same result should obtain here.

 **(3) The degree of skill required.**   In a non-FLSA case, the Tenth Circuit explained that driving commercial trucks was a special skill.   *United States v. Berry*, 717 F.3d 823, 834 (10th Cir. 2013).   However, driving the truck in and of itself is not the only skill at issue here.   To be profitable, Plaintiffs also need to possess business acumen, diligence, and managerial skills, as they are much more like business owners than mere drivers, even though they may drive the

trucks themselves.  They control whether to drive as a solo driver or as a team, what hauls they accept, what routes they take, and when they work.  Response § II at ¶¶ 8, 34-36.  Accordingly, this factor weighs against construing Plaintiffs as employees.

(4) **Whether the work is an integral part of XPO's business.**  Admittedly, this factor weighs in favor of Plaintiffs.  Plaintiffs performed work (freight hauling) for XPO (a freight hauling carrier).  It is worth noting, however, that the vast majority of XPO's hauling business is performed by company drivers (who number above 2100), whereas the total number of independent contractor drivers is much smaller (around 500).  *Supra* § II at ¶ 5.  And, courts have found independent contractor status under the FLSA even where this factor weighs against the defendants.  *See Derolf*, 259 F. Supp. 3d at 883; *Saleem v. Corp. Transp. Grp., Ltd.*, 52 F. Supp. 3d 526, 542–43 (S.D.N.Y. 2014), *order clarified*, 2014 WL 7106442 (S.D.N.Y. Dec. 9, 2014), *aff'd sub nom. Saleem v. Corp. Transportation Grp., Ltd.*, 854 F.3d 131 (2d Cir. 2017).

**Totality of the Circumstances**.  Based on the totality of the circumstances, Plaintiffs, and those similarly situated, were independent contractors of XPO.  *Johnson v. Unified Gov't of Wyandotte County/Kansas City, Kansas,* 371 F.3d 723, 729 (10th Cir. 2004).  Five of the six relevant factors show that Plaintiffs were independent contractors, because they had control over the manner and means of performing the work, substantial opportunity for profit and loss, a large investment in the equipment and other items necessary to perform the work, worked for a finite duration for XPO rather than for a permanent period, and needed substantial business acumen and managerial skills in order to be successful.  Under similar circumstances, federal courts have ruled that commercial truck drivers were not employees under the FLSA.  *See Derolf*, 259 F. Supp. 3d 876; *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 305–06 (5th

Cir. 1998); *United States v. Silk* and *Harrison v. Greyvan Lines, Inc.*, 331 U.S. 704 (1947) (consolidated case) (truck drivers delivering coal and drivers for interstate trucking business carrying mostly household furniture were not employees). This Court should likewise conclude that Plaintiffs were independent contractors.

**D.      Plaintiffs' FLSA Retaliation Claim Fails For Lack of Evidence.**

In analyzing FLSA retaliation claims, the Court applies the shifting burden of proof scheme initially articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Richmond v. Oneok, Inc.*, 120 F.3d 205, 208 (10th Cir.1997). Under this standard, a plaintiff must first establish a *prima facie* case of retaliation. *Id.* The burden then shifts to the employer to offer a legitimate reason for the plaintiff's termination. *Id.* Once the employer offers such a reason, "the burden then shifts back to the plaintiff to show that 'there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual.'" *Id.* (*quoting Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997)). To establish *a prima facie* case of FLSA retaliation, a plaintiff must show the following: (1) he or she engaged in activity protected by the FLSA; (2) he or she suffered adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection existed between the employee's activity and the employer's adverse action. *Id.*

Plaintiffs allege that Pathway Defendants engaged in retaliatory conduct against Plaintiffs for joining in this lawsuit. Dkt. 82, p. 24 at ¶¶ 87-91. They allege no other retaliatory conduct. *See id.* Seven of the Plaintiffs testified that Pathway did not retaliate against them. *Supra* § II at ¶ 23. Two of the Plaintiffs admitted in interrogatory responses that they have no evidence of retaliation. *Id.* at ¶ 24. Six others stated they would provide responsive information "if revealed

in discovery," but have since provided no such information, and the discovery period has expired. *Id*. at ¶ 25. None of the other Plaintiffs identified any basis for a retaliation claim against Pathway Defendants.

Because there is no evidence from which a reasonable trier of fact could conclude that Pathway Defendants retaliated against Plaintiffs, the Court should grant summary judgment on this claim.[5]

## IV.   CONCLUSION

Because there is no genuine issue of material fact that: (1) Pathway Defendants were not a "joint employer" of Plaintiffs, (2) Plaintiffs were independent contractors; and (3) there is no evidence to support Plaintiffs' FLSA retaliation claims, Pathway Defendants respectfully request that this Court enter partial summary judgment in their favor and dismiss the FLSA claims (Counts I and V) asserted against Pathway Defendants.

Dated:  January 16, 2018

Respectfully submitted,

*s/Mark B. Wiletsky*
HOLLAND & HART LLP
One Boulder Plaza
1800 Broadway
Suite 300
Boulder, CO 80302
Phone: (303) 473-2864
Fax: (303) 975-5292
MBWiletsky@hollandhart.com

*s/Jeremy B. Merkelson*
HOLLAND & HART LLP

---

[5] If Plaintiffs argue that Pathway is vicariously liable for any alleged retaliatory conduct by XPO, that argument should fail because: (1) Pathway and XPO are not joint employers and (2) even if they were, Plaintiffs still have not identified any specific act of retaliation that occurred when a Plaintiff was leasing a Pathway truck.

975 F Street NW
Suite 900
Washington, DC 20004
Phone: (202) 654-6919
Fax: (202) 688-2921
JBMerkelson@hollandhart.com
**ATTORNEYS FOR DEFENDANTS /
COUNTERCLAIMANTS PATHWAY LEASING
LLC AND MATTHEW HARRIS**

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2018, I have caused to be electronically filed the

foregoing with the Clerk of Court using CM/ECF system which will send notification of such

filing to the following e-mail addresses:

John R. Crone
Breann J. Plasters
Sarah A. Wolter
ANDRUS WAGSTAFF P.C.
7171 West Alaska Drive
Lakewood, Colorado 80226
Phone:  (303) 376-6360
John.Crone@andruswagstaff.com
breann.plasters@andruswagstaff.com
sarah.wolter@andruswagstaff.com

**ATTORNEYS FOR PLAINTIFFS**

s/ Craig Radoci

10470200_9.docx

17