IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02242-KLM

FRANKLIN MERRILL,
    et al.,

    Plaintiffs,

v.

PATHWAY LEASING LLC, a Colorado limited liability company,
MATTHEW HARRIS, an individual,

    Defendants.
_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiffs' **Motion for Partial Summary Judgment** [#183][1] (the "Motion"),[2] and on Defendants' **Cross-Motion for Partial Summary Judgment** [#196] (the "Cross-Motion"). The parties filed Responses [#195, #209] and Replies [#202, #213]. The Court has reviewed the Motions, Responses, Replies, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#183] is **DENIED** and the Cross-Motion [#196] is

---

[1] "[#183]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] Throughout this Order, the Court cites to the unredacted version of the Motion. *See* [#198-1].

**DENIED in part and GRANTED in part**.[3]

## I. Background[4]

Plaintiffs initiated this collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. *See Fourth Am. Compl.* [#82] at 1-2. Plaintiffs are truck drivers, and many were allegedly employed as "company drivers" by former Defendants XPO Logistics Truckload, Inc., TransForce, Inc., and Con-Way Truckload, Inc. (collectively "XPO"). *Cross-Motion* [#196] at 3; *Response* [#209] at 2. Plaintiffs allegedly each entered into "Contractor Hauling Agreements" with XPO in order to become "owner operators." *Motion* [#198-1] at 2; *Response* [#195] at 3. Defendants Pathway Leasing LLC ("Pathway") and Matthew Harris ("Harris") leased trucks to Plaintiffs who then used the trucks to perform services for carriers including, but not limited to, XPO. *Fourth Am. Compl.* [#82] at 2; *Answer* [#95] at 2; *Motion* [#198-1] at 7; *Response* [#195] at 2.

On May 13, 2013, Defendants and XPO executed a "Carrier Agreement."[5] *Motion* [#198-1] at 3; *Response* [#195] at 11. The Carrier Agreement included the following terms:

(1) "Pathway and Carrier [Former XPO Defendants] agree to develop and implement a leasing and service program (the "Program") customized to the extent reasonably necessary to meet the interests of Carrier."

(2) "Pathway will perform the following services: (i) Make available current information for each Vehicle available for lease in Pathway's inventory; (ii)

---

[3] The parties have consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 40.1(c). *See* [#64, #67].

[4] The following facts are undisputed. The Court cites to the briefs to the extent that facts are undisputed.

[5] While the Carrier Agreement was executed by Defendant Pathway Leasing LLC and Con-Way Truckload, Inc., there is no dispute that the Carrier Agreement is binding on all three, i.e., XPO Logistics Truckload, Inc., TransForce, Inc., and Con-Way Truckload, Inc. *Motion* [#198-1] at 5; *Response* [#195] at 11.

Negotiation of lease financing arrangements for Vehicles, preparation of appropriate lease financing documentation, and closing of lease financing transactions; (iii) Administer the Program, including billing and collecting . . . ."

(3) "Carrier [Former XPO Defendants] agrees to the following obligations: (i) Assist in closing the lease financing arrangement between Pathway and the Operators [Plaintiffs]; (ii) Simultaneously with Pathway's entering into a lease financing arrangement with an Operator for a Vehicle, Carrier shall enter into an independent contractor agreement (an "Independent Contractor Agreement") with such Operator pursuant to which the Operator shall provide transportation services for Carrier in accordance with applicable federal and state laws and regulations; and (iii) With respect to each Operator participating in the Program, and with the Operator's written consent, to remit such Operator's settlement compensation and other amounts owed Operator under the Independent Contractor Agreement, (excluding Carrier's authorized deductions under the Independent Contractor Agreement), directly to Pathway into an account designated by Pathway."

*Motion* [#198-1] at 3-4; *Response* [#195] at 11.

Further, Defendants agreed to "consider the reasonable preferences" of XPO as to which types of trucks would be leased; Defendants agreed to hold open any "proposed lease financing" for "thirty (30) days from the date on which Pathway notifies Carrier of such approval;" XPO agreed to notify Defendants of any requests by any Plaintiffs to "change from a solo to a team operation or vice-versa," whether any Plaintiffs' insurance coverage changed or lapsed, whether any Plaintiff declared bankruptcy, and whether any Plaintiff terminated his Independent Contractor Agreement; and if any Plaintiff was "in default on payments due Pathway under the lease financing arrangement or in the event of an early termination," XPO agreed to "use [its] reasonable best efforts to assist Pathway in locating the Vehicle . . . ." *Motion* [#198-1] at 4-5; *Response* [#195] at 11. Defendants retained discretion over which carrier company any given Plaintiff could drive for; in other words, Defendants have similar arrangements with carrier companies other than just XPO. *Motion*

[#198-1] at 7; *Response* [#195] at 13. Defendants and XPO regularly worked on solutions to problems together, such as whether certain drivers could "get OCC/ACC rather than have to get WC insurance."[6] *Motion* [#198-1] at 9; *Response* [#195] at 15.

Plaintiffs have asserted five claims in this case: (1) failure to pay minimum wage in violation of the FLSA, (2) recision or voiding of lease agreements, warranties and promissory notes, and restitution, (3) unjust enrichment and restitution, (4) quantum meruit, and (5) unlawful retaliation in violation of the FLSA. *Second Am. Compl.* [#54] ¶¶ 59-86. In the Motion, Plaintiffs seek partial summary judgment on one issue: "whether Pathway Defendants and Former XPO Defendants are joint employers within the meaning of the FLSA." [#198-1] at 1. In the Cross-Motion, Defendants seek partial summary judgment on both FLSA claims because, they argue: (1) Defendants are not, as a matter of law, "joint employers" with XPO, (2) Plaintiffs are "independent contractors," not "employees" under the FLSA, and (3) Plaintiffs have not provided evidence to support their FLSA retaliation claims. [#196] at 1.

## II. Legal Standard

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(a), summary judgment should enter if the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

---

[6] The parties do not explain the abbreviations "OCC/ACC" or "WC," but they presumably stand for "occupational accident insurance" and "workers' compensation." *See Motion* [#198-1] at 28.

An issue is genuine if the evidence is such that a reasonable fact-finder could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable fact-finder could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank*, *N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. See 10B Charles Alan Wright, et al., *Federal Practice and Procedure* § 2738 at 356 (3d ed.

1998).

## III.  Analysis

**A.  Count I: Failure to Pay Minimum Wage in Violation of the FLSA**

**1.  Joint Employer Test**

The parties agree that determining whether Defendants are collectively "joint employers" with XPO is a "threshold question in this case."  *Response* [#195] at 17; *Reply* [#202] at 5.  The parties also agree that the Tenth Circuit Court of Appeals has not yet articulated the appropriate test to use in making that determination in the FLSA context. *Motion* [#198-1] at 11 n.1; *Response* [#195] at 17.  The parties' agreement stops there, however.

The Department of Labor's regulations implementing the FLSA recognize that an individual may enter into an employment relationship with two or more persons or entities. 29 C.F.R. § 791.2(a).  Employment by two entities can be "separate and distinct" or "joint," and the determination of which relationship exists "depends upon the facts in the particular case."  *Id.*  Joint employment is found to exist if "employment by one employer is not completely disassociated from employment by the other employer(s)."  *Id.*  However, in making the determination of whether two entities are joint employers under the FLSA, courts have utilized a variety of tests.

Plaintiffs advocate in favor of the test enunciated by the Fourth Circuit Court of Appeals in two decisions issued on the same day: *Hall v. DIRECTV, LLC*, 846 F.3d 757 (4th Cir. 2017) and *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 132 (4th Cir. 2017). *Motion* [#198-1] at 12.  Using the *Hall-Salinas* test, the Fourth Circuit held that under the

FLSA a court "must determine whether the defendants and one or more additional entities shared, agreed to allocate responsibility for, or otherwise codetermined the key terms and conditions of the plaintiff's work" by examining six nonexhaustive factors:

(1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the ability to direct, control, or supervise the worker, whether by direct or indirect means;

(2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms and conditions of the worker's employment;

(3) The degree of permanency and duration of the relationship between the putative joint employers;

(4) Whether through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;

(5) Whether the work is performed on premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

(6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over the functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

*Hall*, 846 F.3d at 769-70. However, the analysis is "highly fact-dependent," and therefore, the "absence of a single factor—or even a majority of factors—is not determinative of whether joint employment does or does not exist." *Id.* at 770 (internal citation omitted).

Defendants advocate in favor of the "economic realities" test, a test which has been used by the Tenth Circuit Court of Appeals in related, but not identical, situations, such as to determine whether an entity qualifies as an employer under the FLSA or whether an individual is an employee or an independent contractor. *Response* [#195] at 17. The

"economic realities" test requires the Court to examine four factors: (1) authority to hire and fire employees; (2) authority to supervise and control work schedules or employment conditions; (3) authority to determine the rate and method of payment; and (4) maintenance of employment records.[7] *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998).

The parties cite to an array of cases from the Tenth Circuit Court of Appeals which have used the economic realities test in a variety of related contexts. In both *Baker v. Flint Engineering and Construction Company*, 137 F.3d at 1440, and *Henderson v. Inter–Chem Coal Co., Inc.*, 41 F.3d 567, 570 (10th Cir. 1994), the Tenth Circuit applied the "economic realities" test to determine whether an individual was an employee or an independent contractor of the alleged employer under the FLSA. *See also Dole v. Snell*, 875 F.2d 802, 804-05 (10th Cir. 1989) (using the economic realities test to determine whether workers were employees or independent contractors under the FLSA). Unlike the present circumstances, the question of whether a "joint employer relationship" existed between two entities was not at issue in either *Baker* or *Henderson*.

In *Beltran v. InterExchange, Inc.*, 176 F. Supp. 3d 1066, 1071, 1079 (D. Colo. 2016), the Court utilized the economic realities test at the motion-to-dismiss stage to determine whether "so-called 'Sponsor' organizations (Sponsors), a mix of for-profit and non-profit organizations . . . formally designated by the U.S. Department of State (DOS) as the exclusive entities permitted to recruit and place au pairs with host families in the United States under the J-1 Visa program," could be deemed employers for purposes of the FLSA.

---

[7] Plaintiffs argue that this four-factor statement by Defendants of the "economic realities" test is incorrect, an issue which is addressed later in this Order. *Reply* [#202] at 7-8.

In *Fuentes v. Compadres, Inc.*, No. 17-cv-01180-CMA-MEH, 2018 WL 1444209, at *5-7 (D. Colo. Mar. 23, 2018), the Court applied the economic realities test but was focused on determining whether each of the defendants was an employer of the plaintiff under the FLSA, rather than whether the entities were joint employers.

In *Carpenter v. DIRECTV, LLC*, No. 14-cv-02854-MJW, 2017 WL 4225797, at *4 (D. Colo. May 16, 2017), the Court acknowledged that the Tenth Circuit has not yet articulated a test for determining whether two entities are joint employers, but noted that the "weight of authority guides this Court to apply the economic realities test to determine whether [the d]efendant [was] a joint employer" of the plaintiffs under the FLSA. The Court concluded that the numerous disputed factual issues "prohibit[ed] the Court from determining the employment relationship of the parties." *Id.* at *5. However, there is no indication in *Carpenter* that the Fourth Circuit decisions were argued or considered, and, in fact, briefing on the motion in *Carpenter* was completed before the *Hall-Salinas* decisions were issued.

In contrast, the Court in *Coldwell v. Ritecorp Environmental Property Solutions* applied a combination of the factors enunciated by the Ninth Circuit in *Bonnette v. California Health and Water Agency*, 704 F.2d 1465 (9th Cir. 1983), and the Tenth Circuit in *Baker*, which were proposed by the parties in order to determine whether the defendants were joint employers. No. 16-cv-01998-NYW, 2017 WL 1737715, at *5-8 (D. Colo. May 4, 2017) (explaining that the focus of the Court's analysis was "on the employee, and not the legal relationship between the employers" and considering control over the plaintiffs, oversight and/or supervision of work, hiring and termination decisions, payment of wages, employment records, payroll, and control of equipment and facilities). Similar to *Carpenter*,

there is no indication in *Coldwell* that the Fourth Circuit decisions were argued or considered, and the briefing on the motion in *Coldwell* was completed before the *Hall-Salinas* decisions were issued.

Support for the Fourth Circuit's test exists in the Tenth Circuit, although no Court here has yet been called on to explicitly decide this issue.  In *Zevallos v. Stamatakis*, No. 2:17-cv-00253-DN, 2017 WL 6060623, at *3 (D. Utah Dec. 6, 2017), the plaintiffs argued for the use of the *Hall-Salinas* test at the motion-to-dismiss stage.  The District Court for the District of Utah outlined the *Hall-Salinas* factors and explained that the plaintiffs had sufficiently alleged that the defendants were "joint employers under the broad Fourth Circuit test." *Id.* at *4.  However, because the plaintiffs had sufficiently alleged that the two entities were joint employers under both the Fourth Circuit test and the Ninth Circuit test articulated in *Bonnette*, the Court analyzed the plaintiffs' claims "using the narrower" factors set forth in *Bonnette.  Id.* at *3-4.

Additionally, in *Sanchez v. Simply Right, Inc.*, No. 15-cv-00974-RM-MEH, 2017 WL 2222601, at *6 (D. Colo. May 22, 2017), the Magistrate Judge issuing a Recommendation on motions for summary judgment looked to two different tests advocated by the parties and analyzed "a number of factors that could 'reasonably apply' to the circumstances," which included the four-factor test set forth in *Bonnette*, 704 F.2d 1465, and "many other factors" drawn from other circuits' case law.   The District Judge adopted the Recommendation, but in doing so he noted that the Fourth Circuit's *Hall-Salinas* test "looks at whether the putative joint employers *allocate the power* to direct such things as controlling a worker."  *Sanchez*, 2017 WL 2222601, at *7 n.17 (emphasis in original).  He stated:

If the Court were writing on a clean slate, it would likely not adopt either test advocated by the parties. Instead, the Court likely would be persuaded to adopt the test recently pronounced by the Fourth Circuit Court of Appeals in *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125 (4th Cir. 2017). The Court is inclined to do so because it agrees with the Fourth Circuit that the test set forth in *Salinas* focuses upon the relevant relationship—"the relationship between the putative joint employers"—as opposed to the relationship between the employee and the putative employers. *Salinas*, 848 F.3d at 142. As the Fourth Circuit explained, the latter relationship is still part of the inquiry, but it is distinct from the former and addressed separately. *Id.* at 142-43. However, the Court chooses not to take this approach in this case, not least because *Salinas* was decided after [the defendant's] motion for summary judgment was filed. Moreover, although plaintiffs cite to *Salinas* in their response to [the defendant's] objections, they persist in advocating for their self-made "modern test of joint employment", which ignores the test established in *Salinas*. As such, the Court has received no argument as to how the facts of this case mesh with the *Salinas* test. Moreover, the way the parties have presented their facts and arguments is within the framework of [the defendant's] relationship with the non-stayed plaintiffs, rather than [the defendant's] relationship with [the other purported joint employer]. The Court would, thus, be writing on a blank slate, which it does not believe would be appropriate, and will not do on this occasion. In addition, adoption of *Salinas* may very likely alter the Court's assessment of whether facts can be considered collectively, at least for purposes of the joint-employer analysis, because the *Salinas* test appears to find relevant all of the circumstances between putative employers, even if they only occurred on one occasion or applied to only certain plaintiffs. *See Salinas*, 848 F.3d at 145-47. Plaintiffs, though, do not make that argument, and, as noted, frame their arguments in terms of the relationship between an employee and the putative employer. . . .

*Id.* at n.13 (internal citations to the record omitted).

Having carefully considered the parties' arguments and related case law on this issue, and in the absence of binding precedent in this Circuit, the Court agrees with Plaintiffs and with the dicta in *Sanchez* that the test enunciated by the Fourth Circuit in *Hall* and *Salinas* is appropriate and should be used here. The *Hall-Salinas* test properly determines whether more than one person or entity are putative joint employers based on the relationship between them, and the relationship between the putative employee and the

putative employers is addressed as a distinct, separate inquiry, unlike the economic realities test advocated by Defendants, which combines these inquiries. The Court therefore utilizes the *Hall-Salinas* test below in determining whether Defendants are joint employers with XPO.

### 2. Application of the Joint Employer Test

As an initial matter, Defendants argue that "the 15 XPO emails and attachments on which Plaintiffs rely . . . are inadmissible hearsay and are not admissions by a party opponent under Fed. R. Evid. 801." *Response* [#195] at 11 n.5 (citing *Email Exs.* [#183-3, -9 to -22]). As Plaintiffs point out, Defendants raise this argument in a single sentence within a single footnote and do not explain why the language in any given e-mail may constitute inadmissible hearsay. *See Reply* [#202] at 2 n.1. However, Defendants are correct that statements contained in emails offered to prove the truth of the matter asserted in those statements constitute inadmissible hearsay. *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1181 (10th Cir. 2013) (citing Fed. R. Evid. 801(c), 802). Defendants' assertion that these exhibits are "15 *XPO* emails and attachments" is misleading, though. *Response* [#195] at 11 n.5 (emphasis added). Many of these documents are email chains, and nearly all are written in whole or in part by Defendant Matthew Harris. *See Email Exs.* [#183-3, -9 to -22]. Thus, in the absence of further argument by Defendants, the Court finds pursuant to Fed. R. Evid. 801(d)(2) that the portions of those emails written by Defendant Matthew Harris are admissions by a party opponent (regardless of whether they are statements by Defendant Harris in his individual capacity or as an agent of Pathway Leasing) and thus are not inadmissible hearsay. Regarding the portions of the emails not written by Defendant Matthew Harris, the Court does not consider them in connection with

adjudication of the Motion and Cross-Motion to the extent that the statements in the emails are offered to prove the truth of the matters asserted in them. *See* Fed. R. Civ. P. 801(c).

Regarding the determination of whether Defendants and XPO were joint employers, there are genuine issues of material fact precluding entry of summary judgment in either party's favor, as demonstrated below. *See Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1228-29 (10th Cir. 2014) (holding that determination of joint employer status is a question of fact for the fact-finder); *Johnson v. Unified Gov't of Wyandotte Cty./Kansas City, Kansas*, 371 F.3d 723, 727-28 (10th Cir. 2004) (same).

With respect to the first *Hall-Salinas* factor, i.e, whether the putative joint employers jointly "determine, share, or allocate the ability to direct, control, or supervise the worker," Plaintiffs argue that the evidence demonstrates joint control in that "[f]ormer XPO Defendants' employees would assist potential drivers in completing Pathway Defendants' lease agreements." *Motion* [#198-1] at 14-16 (citations to the record omitted). Plaintiffs also point to evidence that "once a driver agreed to sign up to drive for Pathway Defendants and Former XPO Defendants, they [sic] were no longer allowed to go back to driving solely for Former XPO Defendants, if that is where they [sic] started." *Id.* at 15 (citations to the record omitted). Additionally, Plaintiffs point to evidence suggesting that "Pathway Defendants retained discretion over which carrier company any given Plaintiff could drive for" and that Defendants regularly communicated with XPO for the purpose of gauging the performance of drivers. *Id.* (citations to the record omitted). Further, Plaintiffs argue that the evidence demonstrates that "[b]oth Pathway Defendants and Former XPO Defendants exercised control over Plaintiffs' spending of funds set aside for maintenance." *Id.* (citations to the record omitted). Finally, Plaintiffs point to evidence suggesting that

XPO sometimes selected the trucks Defendants would buy and which drivers would be assigned those trucks.  *Id.* at 16 (citations to the record omitted).

Defendants maintain that this factor weighs against finding a joint employer relationship based primarily on alleged facts regarding Plaintiffs' work, not facts regarding the relationship between Defendants and XPO.  For example, Defendants contend that Plaintiffs "retained an extraordinary degree of control over their work conditions." *Response* [#195] at 26.  Defendants provide evidence suggesting that Plaintiffs were able to hire their own independent contractors or employees to perform the work and made their own business decisions in order to "maximize their profitability."  *Id.* at 26-27 (citations to the record omitted).  Finally, Defendants point to evidence suggesting that Plaintiffs had discretion over how they transported goods, when they refueled, the methods they chose to transport goods, and when to take time off, which they argue point towards a lack of control by the putative joint employers.  *Id.* (citations to the record omitted).

With respect to the second *Hall-Salinas* factor, i.e., whether the putative joint employers jointly determine, share, or allocate the power to hire or fire the worker or modify the terms and conditions of the worker's employment, Plaintiffs point to evidence suggesting that Defendants and XPO "did in fact operate in an intertwined nature." *Motion* [#198-1] at 16 (citations to the record omitted); *see also Hall*, 846 F.3d at 769-70. Additionally, Plaintiffs provide evidence that a recruiter for XPO emailed Plaintiff Merrill explaining that "[o]ur newest partner in a *joint venture* to grow our Independent Contractor division is Pathway Leasing LLC." *Exhibit Three* [#183-3] at 1 (emphasis added).  Plaintiffs maintain that the evidence showing that XPO and Defendants were described as being a part of a "joint venture" demonstrates that Plaintiffs were subject to "total control over the

terms and conditions of their employment" by both entities.  *See Motion* [#198-1] at 17 (citations to the record omitted).

Defendants contend that the second factor weighs against finding a joint employer relationship because "Pathway did not have the authority to hire or fire Plaintiffs, nor did it have the power to supervise or control Plaintiffs' work conditions.  *Response* [#195] at 27. Specifically, Defendants point to evidence to suggest that XPO, not Pathway, made decisions regarding the termination of Plaintiffs, performing pre-hire background checks on Plaintiffs, and conducting the orientation for Plaintiffs.  *See Response* [#195] at 5 (citations to the record omitted).

With respect to the third *Hall-Salinas* factor, i.e., the degree of permanency and duration of the relationship between the putative joint employers, Plaintiffs point to the Carrier Agreement executed between the putative joint employers to argue that it demonstrates that the two entities "sought to memorialize their 'joint venture' in writing for the purpose of creating an ongoing and lasting relationship."  *Motion* [#198-1] at 19. Plaintiffs also point to evidence to suggest that Defendants placed trucks on XPO's property for the purpose of advertising and that XPO "maintained a bulletin board at their [sic] office in Joplin, Missouri with information on available trucks to lease from Pathway Defendants."  *Id.* at 22 (citations to the record omitted).

Defendants maintain that this factor weighs against finding a joint employer relationship because "the relevant agreements signed by Plaintiffs (the XPO Contract Hauling Agreement and the Pathway Equipment Lease Agreement) are fixed in duration," and that the relationship was not permanent because "drivers were free to take leave as they wished and were never under any obligation to accept dispatched loads at a particular

time." *Response* [#195] at 27-28 (citations to the record omitted).

With respect to the fourth *Hall-Salinas* factor, i.e., whether one putative joint employer, through shared management or a direct or indirect ownership interest, controls, is controlled by, or is under common control with the other putative joint employer, Plaintiffs argue that the evidence demonstrates that this factor weighs in favor of finding a joint employer relationship. *See Motion* [#198-1] at 25 (citations to the record omitted); *see also Hall*, 846 F.3d at 769-70. Specifically, Plaintiffs maintain that the Carrier Agreement executed between Defendants and XPO demonstrates that the entities agreed to, among other things: (1) consider the preferences of XPO as to which types of trucks would be leased; (2) hold open any proposed lease financing for thirty days from the date on which Defendants notified XPO of approval of the financing; (3) notify Defendants of any requests by any Plaintiffs to change from a solo to a team operation; (4) notify Defendants whether any Plaintiff's insurance coverage changed or lapsed or whether any Plaintiff declared bankruptcy; and (5) assist Defendants in locating the trucks if any Plaintiff defaulted on payments or in the event of an early lease termination. *Motion* [#198-1] at 25 (citations to the record omitted). Plaintiffs also point to evidence suggesting that Defendants and XPO communicated about Plaintiffs' insurance coverage. *See Exhibit 14* [#183-14] at 1.

Defendants contend that this factor weighs against finding a joint employer relationship. Specifically, Defendants maintain that there is no sharing of profits and losses between the putative joint employers and that there are no "reciprocal payments" between them. *Response* [#195] at 28 (citations to the record omitted). Additionally, Defendants maintain that the "Carrier Agreement contains no provision giving Pathway authority or power to control XPO's business (or vice versa)" and that "the parties expressly disclaimed

a 'joint venture' relationship." *Id.* (citations to the record omitted).

With respect to the fifth *Hall-Salinas* factor, i.e., whether work is performed on the premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another, Plaintiffs acknowledge that this factor is "probably the least applicable." *Motion* [#198-1] at 27. However, Plaintiffs go on to argue that the evidence demonstrates that because the hiring process, maintenance and selection of trucks, and branding of the trucks with XPO's logos occurred on XPO's property in Joplin, Missouri, that this factor nevertheless points towards finding a joint employer relationship. *Id.* (citations to the record omitted).

Defendants maintain that this factor does not apply "because Plaintiffs are over-the-road truck drivers who do not work in a shared work environment." Defendants further maintain that Plaintiffs' argument that Pathway and XPO worked together to make repairs is incorrect because "Pathway did not 'make repairs.'" *Response* [#195] at 29 (citations to the record omitted).

Lastly, with respect to the sixth *Hall-Salinas* factor, i.e., whether formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over the functions ordinarily carried out by an employer, Plaintiffs argue that the evidence demonstrates that this factor weighs in favor of finding a joint employer relationship. *See Motion* [#198-1] at 28-29. Specifically, Plaintiffs maintain that Defendants "worked closely" with XPO to determine Plaintiffs' rate of pay and that Defendants and XPO "worked together to determine where and which drivers needed to be able to cover workers compensation insurance or occupational accident insurance." *Id.* (citations to the record omitted). Finally, Plaintiffs maintain that XPO "sometimes picked out which trucks Pathway

Defendants would buy and which drivers would be assigned those trucks." *Id.* at 29. (citations to the record omitted).

Defendants maintain that this factor weighs against finding a joint employer relationship because "Pathway did not have sufficient control over the functions ordinarily carried out by an employer." *Response* [#195] at 29. Defendants point to evidence suggesting that "Pathway had no payroll department" and XPO maintained insurance records, not Defendants. *Response* [#195] at 25-26 (citations to the record omitted).

Taking the parties' arguments regarding each of the *Hall-Salinas* factors together, there are genuine issues of material fact with respect to whether Defendants and XPO operated as joint employers. The facts and supporting evidence provided by the parties amply demonstrate a factual issue not properly resolved on a motion for summary judgment.

For example, with respect to factor one, i.e., whether the putative joint employers jointly "determine, share, or allocate the ability to direct, control, or supervise the worker," Plaintiffs provide evidence to support their contention that Defendants exerted control over Plaintiffs' employment positions. *See Motion* [#198-1] at 15 (citations to the record omitted). Plaintiff's point to an excerpt of Plaintiff Rodney Lacy's deposition to support this assertion, which provides:

> Q. After you become an owner-operator, did you consider going back to being a company driver?
> A. I thought about it, but I couldn't. You see? You understand? When you sign that contract–once you sign that contract, I could no longer go back to being a company driver for Con-Way. . . .
> Q. And who told you that?
> A. . . . I can't recall exactly who told me, but it was told to me either through TJ, Connie, or Barbara.
> Q. And TJ, Connie, or Barbara, they're all with Con-Way or XPO?

A.  Yes. Or if I. . . could leave, I could only go where Matt wanted me to take his truck.  I couldn't go where I wanted to go.  I got to go wherever - whoever he – whoever do [*sic*] – he was doing business with.
Q.  Okay.  And who told you that?
A.  He did.

*Lacy Dep.* [#183-7] at 12:23-13:20.

Defendants, however, maintain that Plaintiffs "retained an extraordinary degree of control over their work conditions."  *Response* [#195] at 10, 26-27.  To support this contention Defendants point to excerpts of Plaintiff Eric Ard's deposition about his control over "picking up and completing deliveries."  *See id.* at 10, 27 (citations to the record omitted).  The deposition excerpt provided by Defendants provides:

Q.  Pathway didn't set for you any rules regarding picking up and completing deliveries on time; is that right?
A.  No.
Q.  That's not right or Pathway didn't do that?
A.  They didn't do that.
Q.  Okay. Thank you. Did Pathway establish any rules for you regarding loading or unloading of the freight?
A.  No.
Q.  Has Pathway ever given you goods or freight to ship?
A.  No.
Q.  Has Pathway ever assigned you any particular loads or assignments?
A.  No.
Q.  Has Pathway ever told you what you could or could not transport?
A.  No.
Q.  When you leased a truck through Pathway, how did you get your assignments?
A.  Via Qualcomm from Con-way.
Q.  Is Pathway involved in that process at all?
A.  No.

*Ard Dep.* 54:3-55:3 [#195-9] at 11.

This evidence provided by Defendants appears to point to a lack of control by Defendants over Plaintiffs' work in certain aspects, like receiving load assignments. However, the evidence provided by Plaintiffs focuses on other aspects of Plaintiffs'

employment, like supervising performance and directing which carriers Plaintiffs could work for, and indicates that some level of control was maintained by Defendants. *See Hall*, 846 F.3d at 769 ("[T]he FLSA does not require that an entity have unchecked—or even primary—authority over all—or even most—aspects of a worker's employment for the entity to qualify as a joint employer. Rather, the entity must only play a role in establishing the key terms and conditions of the worker's employment."). Because the parties both point to evidence supporting their relative positions, a reasonable fact-finder could conclude that, based on the evidence presented, this factor weighs in favor of or against a finding of a joint employer relationship. Thus, there is a genuine issue of material fact regarding whether the first factor of the *Hall-Salinas* test supports a finding of a joint employer relationship. *See Rivera v. State Farm Mut. Auto. Ins. Co.*, No. 16-cv-00227, 2017 WL 4012134, slip op. at *5 (D. Colo. Sept. 12, 2017) (declining to enter summary judgment in favor of defendant because a fact-finder could interpret the conflicting evidence presented in favor of either party at trial).

Because the parties provide conflicting evidence with respect to all six of the *Hall-Salinas* factors which could lead a reasonable fact-finder to resolve the issues in favor of either party, the Court finds that there are genuine issues of material fact regarding whether Defendants and XPO were joint employers. *See Anderson*, 477 U.S. at 248 (explaining that an issue is genuine if the evidence is such that a reasonable fact-finder could resolve the issue in favor of the nonmoving party). Thus, entry of summary judgment on the issue of whether Defendants and XPO were joint employers under the FLSA is inappropriate.

Accordingly, Plaintiffs' Motion [#183] is **denied** and Defendants' Cross-Motion [#196] is **denied in part** to the extent that they seek entry of summary judgment regarding

whether a joint employer relationship existed.

### 3. Whether Plaintiffs were Employees or Independent Contractors

Defendants move for partial summary judgment on Plaintiffs' two claims under the FLSA, arguing that Plaintiffs are independent contractors, not employees under the FLSA. *Cross-Motion* [#196] at 1. Because only Defendants have moved on this issue, the Court views the evidence in the light most favorable to Plaintiffs, as the nonmoving party. *See Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1186 (10th Cir. 2015) ("We . . . recit[e] all summary-judgment evidence in the light most favorable to . . . the nonmovant.").

In order to succeed on the motion, Defendants must show that there is no genuine issue of material fact that Plaintiffs were independent contractors as a matter of law. *See* Fed. R. Civ. P. 56(a). If the fact-finder finds that Defendants and XPO *were not* joint employers, then only the evidence bearing on the relationship between Defendants and Plaintiffs may be examined to determine whether Plaintiffs were independent contractors or employees. If the fact-finder finds that Defendants and XPO *were* joint employers, then all of the evidence bearing on the relationship between Defendants and XPO on the one hand and Plaintiffs on the other may be examined to determine whether Plaintiffs were independent contractors or employees. Thus, the Court proceeds below, for purposes of this discussion only, as though a joint employer relationship has been established between Defendants and XPO, because that potential outcome is most favorable to Plaintiffs as the nonmoving party. *See Ellis*, 779 F.3d at 1186.

There is no dispute that the economic realities test applies to determine whether an individual is an employee, and thus, covered under the FLSA. "[T]he economic realities of the relationship govern, and the focal point is whether the individual is economically

-21-

dependent on the business to which he renders service . . . or is, as a matter of economic fact, in business for himself." *Baker*, 137 F.3d at 1440 (internal quotation marks omitted). The Tenth Circuit has set out six factors to consider in applying the economic realities test:

(1) the degree of control exerted by the alleged employer over the worker;
(2) the worker's opportunity for profit or loss;
(3) the worker's investment in the business;
(4) the permanence of the working relationship;
(5) the degree of skill required to perform the work; and
(6) the extent to which the work is an integral part of the alleged employer's business.

*Id.*

As an initial matter, the Court notes that the parties do not agree on what the focus of this analysis should be. Plaintiffs contend that the Court should focus on the "focal point of the economic realities analysis: economic dependence" and do not specifically address the factors set out in *Baker*.[8] *Response* [#2019] at 14 (internal quotation marks omitted). Defendants incorporate their analysis regarding two of the *Baker* factors from a part of their Response [#195] primarily discussing the issue of joint employment. *See Cross-Motion* [#196] at 11-12. Regardless, as demonstrated below, genuine issues of material fact remain which preclude entry of summary judgment on this issue.

With respect to the first factor, i.e., the degree of control exerted by the alleged employer over the worker, Defendants maintain "Plaintiffs retained an extraordinary degree of control over their work conditions," and thus should be deemed independent contractors. *Response* [#195] at 26. To support this contention, Defendants point to evidence that

---

[8] Plaintiffs cite to *Powers v. Emcon Assocs., Inc.*, No. 14-cv-03006-KMT, 2017 WL 4075766 (D. Colo. Sept. 14, 2017) to support their contention that the focus of the Court's analysis should be on "economic dependence." However, the Court in *Powers* laid out and utilized the six factors set out by the Tenth Circuit in *Baker*. *Id.* at *5-6.

Plaintiffs could hire their own drivers to complete the work or work with other drivers as a team. *Id.* at 26-27 (citations to the record omitted). Further, Defendants contend that the evidence demonstrates that Plaintiffs had discretion over "whether to decline loads based on weight," how they transported goods, when and where they refueled, and when to take time off. *Id.* at 27 (citations to the record omitted).

Plaintiffs maintain that this factor weighs in favor of concluding that they were employees and cite to evidence suggesting that Con-Way sent its payments for Plaintiffs' work as drivers directly to Defendants, and that Defendants would "deduct lease payments and other amounts pursuant to the lease agreement" before distributing the remaining portion of Plaintiffs' paychecks to Plaintiffs. *Response* [#209] at 15 (quoting *Lacy Dep.* 50:22-51:14 [#209-2] at 14). Further relating to this factor, Plaintiffs contend that they "were only allowed to drive for specific carrier companies approved by Pathway Defendants," but they cite to no evidence here to support this contention. *Response* [#209] at 15; *but see Lacy Dep.* [#183-7] at 12:23-13:20 (stating that Plaintiffs could not go back to being company drivers after signing the contract, and that they could only go where Defendants wanted them to go).

With respect to the second factor, i.e., the workers' opportunity for profit or loss, Defendants contend that the evidence demonstrates that Plaintiffs retained significant opportunity for profit or loss. *Cross-Motion* [#196] at 12. Defendants point to evidence suggesting that Plaintiffs could "maximize their earnings by driving as a team or taking advantage of their right to decline loads." *Id.* (citing *Response* [#195] at 4) (citations to the record omitted). Further, Defendants provide evidence suggesting that Plaintiffs had the ability to decline to transport loads in particular areas or decline to transport heavy loads,

as opposed to company drivers (who Defendants refer to as "employees") who "had to follow XPO's specific fuel and routing program or risk having their pay deducted to cover the fuel costs." *Id.* (citing *Response* [#195] at 10) (citations to the record omitted).

With respect to the third factor, i.e., the workers' investment in the business, Defendants maintain that "Plaintiffs took substantial risks by investing in their businesses as owner-operators." *Cross-Motion* [#196] at 12. Defendants point to evidence suggesting that Plaintiffs were "responsible for financing maintenance and repairs to the trucks, fuel costs and surcharges, workers compensation and business liability insurance, and tax and accounting services." *Id.* (citing *Response* [#195] at 12-13) (citations to the record omitted). Further, Defendants argue that the evidence demonstrates that Plaintiffs were "required to secure a lease or otherwise procure the tractors necessary to perform their work for XPO" and that "XPO made no investment in Plaintiffs' trucks." *Id.* at 13 (citing *Response* [#196] at 13) (citations to the record omitted).

With respect to the fourth factor, i.e., the permanence of the working relationship, Defendants maintain that the evidence demonstrates that Plaintiffs were independent contractors because the relevant agreements signed by Plaintiff were fixed in duration, rather than permanent. *Response* [#195] at 28 (citations to the record omitted). Plaintiffs, on the other hand, maintain that "there is no dispute that the relationship between Plaintiffs and Pathway Leasing was permanent insofar as there was no way out for any given Plaintiff for as long as it took to buy their [sic] way out of their [sic] lease." *Response* [#209] at 15. However, Plaintiffs cite to no evidence in the record to support this contention. *See also Reply* [#213] at 7 (arguing with respect to this statement that "counsel's mere arguments are not evidence and do not create a genuine issue of fact").

With respect to the fifth factor, i.e., the degree of skill required to perform the work, Defendants contend that this factor points towards finding that Plaintiffs were independent contractors because "driving commercial trucks is a special skill," and "Plaintiffs also need to possess business acumen, diligence, and managerial skills, as they are much more like business owners than mere drivers." *Cross-Motion* [#196] at 13.

With respect to the sixth factor, i.e., the extent to which the work is an integral part of the alleged employer's business, Defendants concede that "this factor weighs in favor of Plaintiffs." *Cross-Motion* [#196] at 14. However, Defendants point to evidence to suggest that "the vast majority of XPO's hauling business is performed by company drivers . . . whereas the total number of independent contractors is much smaller." *Id.* (citing *Response* [#195] at 3) (citations to the record omitted).

Because the parties provide conflicting evidence with respect to the issue of whether Plaintiffs were independent contractors or employees, the Court finds that there is a genuine issue of material fact which precludes entry of summary judgment on this issue. *See Anderson*, 477 U.S. at 248. Simply stated, the evidence as presented by the parties could lead a reasonable fact-finder to conclude that Plaintiffs were either independent contractors or employees, which precludes the Court from entering summary judgment in favor of Defendants. *See Henderson*, 41 F.3d at 570-71 (finding that summary judgment was inappropriate because the evidence presented by the defendant supported an inference that the plaintiff was an employee, but the evidence presented by the plaintiff supported an inference that he was an independent contractor).

Accordingly, Defendants Cross-Motion [#196] is **denied** with respect to this issue.

**B.    Count V: FLSA Retaliation Claims**

Finally, Defendants argue that "Plaintiffs have no evidence to support their FLSA retaliation claims." *Cross-Motion* [#196] at 1.

"In analyzing FLSA retaliation claims, we apply the shifting burden of proof scheme initially articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997). Under this framework, a plaintiff must first establish a prima facie case of retaliation. *Id.* Then, the burden shifts to the employer to offer a legitimate reason for the adverse action. *Id.* Lastly, after the employer has offered such a reason, the burden shifts back to the plaintiff to show that there is a genuine issue of material fact as to whether the employer's proffered reason is pretextual. *Id.*

In order to establish a prima facie case of retaliation under the FLSA, a plaintiff must show that:

> (1) he or she engaged in activity protected by the FLSA; (2) he or she suffered adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection existed between the employee's activity and the employer's adverse action.

*Id.*

Defendants contend that Plaintiffs' retaliation claim under the FLSA fails for lack of evidence. *Cross-Motion* [#196] at 15. Specifically, Defendants maintain that the only retaliatory conduct Plaintiffs allege is that "Pathway Defendants engaged in retaliatory conduct against Plaintiffs for joining in this lawsuit." *Id.* Defendants point to evidence that suggests that "[s]even of the Plaintiffs testified that Pathway did not retaliate against them. . . . [t]wo of the Plaintiffs admitted in interrogatory responses that they have no evidence of retaliation. . . . [and s]ix others stated that they would provide responsive information if

revealed in discovery, but have since provided no such information." *Id.* at 15-16 (citations to the record and internal quotation marks omitted).

Plaintiffs contend that "Defendants failed to recognize and seek information regarding acts of retaliation committed by Former XPO Defendants for which Pathway Defendants are liable as joint employers." *Response* [#209] at 16. Regardless of whether this may be true, because the movants, i.e., Defendants, do not bear the ultimate burden of persuasion at trial on this claim, they may make their prima facie demonstration of the absence of a genuine issue of material fact simply by pointing to a lack of evidence for the nonmovants, i.e., Plaintiffs, on an essential element of their claim. *See Adler*, 144 F.3d at 671. Because Defendants have carried their initial burden of making a prima facie showing of a lack of evidence, the burden shifts to Plaintiffs to put forth sufficient evidence for each essential element of their claim such that a reasonable fact-finder could find in their favor. *See Anderson*, 477 U.S. at 248; *Simms*, 165 F.3d at 1326. Plaintiffs must go beyond the allegations and denials of the pleadings and provide admissible evidence, which the Court views in the light most favorable to them. *Adickes*, 398 U.S. at 157; *Panis*, 60 F.3d at 1490 (citing *Celotex*, 477 U.S. at 324).

Plaintiffs first point to evidence to suggest that "at least one Plaintiff testified as to direct retaliation from Pathway Defendants." *Response* [#209] at 16. Plaintiff Becky Austin stated the following in response to an interrogatory regarding retaliation: Defendant "Matt Harris called . . . and proceeded to tell me I was not allowed to speak to anyone except him about his law suit and if I joined it I would be having to take off work for depositions and several court dates." *Pl. Becky Austin's Responses to Defs.' Second Set of Discovery Requests* [#209-9] at 3.

"Adverse action" in support of a prima facie case of retaliation under the FLSA may include, for example, termination of employment, *Lewis v. Okla. ex. rel. Bd. of Regents*, 42 F. App'x 160, 170 (10th Cir. 2002), a written warning letter if it effects a significant change in employment status, *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215 (10th Cir. 2006), demotion, *Anderson v. Clovis Mun. Sch.*, 265 F. App'x 699, 704-05 (10th Cir. 2008), alteration in pay, *id.*, and significant change in job responsibilities, *id.*

Defendant Harris's statement to Plaintiff Becky Austin does not rise to the level of the sort of adverse employment actions just described. The statement does not even rise to the level of the examples provided by Plaintiffs in their brief: informing a prospective employer that an employee had filed a complaint with the Department of Labor, and interference with a former employee's subsequent employment opportunities by speaking to the landlord of the new employer. *Response* [#209] at 17 (citing *Singh v. Jutla & C.D. & R's Oil, Inc.*, 214 F. Supp.2d 1056, 1059 (N.D. Cal. 2002)). "A mere inconvenience or alteration of job responsibilities" is not an adverse employment action. *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998). Taking Plaintiff Becky Austin's evidence in a light most favorable to her, and without more, Defendant Harris's asserted statement *at most* rises to the level of imposing mere inconvenience on her, and does not rise to the required level of "adverse action." Hence, entry of summary judgment in favor of Defendants on the claim by Plaintiff Becky Austin is appropriate.

As to the remaining Plaintiffs, they point to an excerpt from an email which states:

At approximately 11:00 am, when CFI had the 'contract' prepared for Mr. Jurcak to sign in order to drive for CFI, Melinda Creed entered the room and said, 'I can't do business with you because of the lawsuit you have against us.' Mr. Jurcak then left CFI's offices without employment.

*Exhibit Thirty-Three* [#209-11] at 1.  Defendants argue that this statement "appears in an [in]admissible hearsay email drafted by Plaintiffs' counsel," but they overlook the fact that during her deposition, Ms. Creed reviewed the e-mail and confirmed that she essentially said those or similar words to Plaintiff.  *Dep. of Creed* [#209-10 at 59-61.  In the absence of any further argument on this point, the Court rejects Defendants' argument as to Plaintiff Jurcak.

Defendants also cryptically argue that "[t]he Complaint alleges retaliatory conduct *by Pathway Defendants* against Plaintiffs for joining in this lawsuit.  Now that the evidence has disproven any such conduct, Plaintiffs change course and assert that their claims are really based on *XPO's* conduct."  *Reply* [#213] at 10 (internal citations omitted) (emphases in original).  Rather, the Court notes that the complaint explicitly states, in part, that XPO has "refused to hire or re-hire certain Plaintiffs because they joined this lawsuit." [#82] ¶ 89.  Thus, there does not appear to be any "change of course" sufficient to permit entry of summary judgment on this claim, as suggested by Defendants.

To the extent Defendants argue that the only asserted retaliatory action taken here was done by XPO, and that Defendants and XPO are not joint employers, the Court has already found above that there are genuine issues of material fact regarding whether the entities were joint employers.  *See supra* § III.A.2.

Finally, to the extent that Defendants argue in the Cross-Motion that "Plaintiffs still have not identified any specific act of retaliation that occurred when a Plaintiff was leasing a Pathway truck," they have not indicated in their Reply whether they intended to continue pursuing this argument with respect to the incident regarding Plaintiff Larry Jurcak and Melinda Creed. [#196] at 16 n.5.  In the absence of further explanation regarding the

applicability of this argument, the Court rejects the argument here to the extent Defendants may have been attempting to assert it against Plaintiff Larry Jurcak. However, as explained above, the argument is accepted to the extent it is asserted against all other Plaintiffs, given that no evidence of specific acts of retaliation against them has been provided.

Accordingly, the Motion [#196] is **denied** to the extent that Defendants seek entry of summary judgment on Plaintiff Larry Jurcak's FLSA retaliation claim. The Motion [#196] is **granted** with respect to all other Plaintiffs on this claim, and summary judgment shall enter in Defendants' favor accordingly.

### IV.  Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Motion [#183] is **DENIED**.

IT IS FURTHER **ORDERED** that the Cross-Motion [#196] is **DENIED in part and GRANTED in part**. The Cross-Motion is **denied** with respect to Count I and with respect to Plaintiff Larry Jurcak's FLSA retaliation claim under Count V. The Cross-Motion is **granted** with respect to Count V and all Plaintiffs other than Plaintiff Larry Jurcak, and summary judgment shall enter in favor of Defendants on this count accordingly.

Dated:  May 14, 2018

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge