## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-02242-KLM

FRANKLIN MERRILL, ET AL, ,

      Plaintiff,

v.

PATHWAY LEASING LLC, a Colorado limited
liability company; MATTHEW HARRIS, an
individual,

      Defendants.

---

## DEFENDANTS XPO LOGISTICS TRUCKLOAD, INC., TRANSFORCE, INC., AND CON-WAY TRUCKLOAD, INC.'S SECOND SUPPLEMENTAL BRIEF RELATED TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF COURT'S ORDER DATED OCTOBER 5, 2017

---

Pursuant to the Court's April 20, 2019 Minute Order (Dkt. #321), XPO Logistics Truckload, Inc., TransForce, Inc., and Con-way Truckload, Inc. (collectively, "XPO"), hereby submit the following second supplemental brief in response to Section C of Plaintiffs' Supplemental Reply (Dkt. #317).

## ARGUMENT

Plaintiffs' Supplemental Reply raises another "Hail Mary" argument that even if the Missouri Uniform Arbitration Act ("MUAA") is not preempted by the Federal Arbitration Act ("FAA"), the Court should still reconsider its Order compelling arbitration because the MUAA's "contracts of adhesion" exception applies.  (Dkt. #317.)

It is important to note Plaintiffs never argued the independent-contractor agreements containing an arbitration provision constituted "contracts of adhesion" or were otherwise unconscionable in response to XPO's Motion to Dismiss and Compel Individual Arbitrations. While the MUAA was not directly at-issue in the 2017 briefing, XPO's Motion to Dismiss and Compel Individual Arbitrations unequivocally addressed the enforceability of the arbitration agreements under Missouri contract law, and Plaintiffs never disputed it.  (Dkt. #58, pp. 8-11; Dkt. #75.)  In fact, the Court unequivocally recognized in its October 5, 2017 Order compelling arbitration that "Plaintiffs have conceded that the arbitration provision in the Agreement is valid and enforceable for some matters . . ." and thus, the Court only turned to whether the arbitration provision covered Plaintiffs' claims.  (Dkt. #164, p. 4 (citing Plaintiffs' Response, Dkt. #75, p. 5).)

While XPO appreciates the Court is allowing it to file a supplemental brief in response to this new argument, XPO must again note for the record Plaintiffs' eleventh-hour argument that the agreements constitute contracts of adhesion should have been raised in the 2017 briefing and cannot be a basis for Rule 60(b)(6) relief in 2019.  *See, e.g., Servants of Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000) ("[I]t is not appropriate [on a motion to reconsider] to advance arguments that could have been raised in prior briefing").  The rationale behind the well-accepted rule that a party cannot use a motion for reconsideration to present new arguments that should have been raised before applies with even more force in this case given the significant passage of time (18 months since arbitration was originally compelled) and the fact that a trial on the merits has already taken place between Plaintiffs and Defendant Pathway Leasing, LLC.

While Plaintiffs contend the arbitration agreements are not enforceable, the facts and Missouri law show otherwise.  Plaintiffs characterize the agreement as a "take it or leave it" proposition that should not be enforced. (Dkt. #317.) Missouri courts have, however, rejected that very argument, emphasizing that "[b]ecause [the employee] ha[s] the option of seeking employment elsewhere, the relative bargaining power of the [employer] does not make the [a]greement an adhesion contract or unconscionable."  *Smith v. Kriska*, 113 S.W.3d 293, 298 (Mo. App. 2003) (rejecting employee's argument that agreement was unconscionable because it was presented on a take-it-or-leave-it basis); *see also Thomas v. Dillard's*, 2010 WL 2522742, at *3 (E.D. Mo. June 16, 2010) (compelling arbitration and holding the agreement of both parties to arbitrate employment-related claims is sufficient mutual obligation for enforceability).[1]

An unconscionable contract under Missouri common law is one in which "no man in his senses and not under delusion would make, on the one hand, and as no honest and fair man would accept on the other," or one where there is "an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it."  *Pleasants v. American Exp. Co.*, 541 F.3d 853, 857 (8th Cir. 2008) (holding class-action waiver contained in arbitration clause was not unconscionable or unenforceable).  A party "cannot simply allege that a pre-printed contract is a contract of adhesion and offer no other proof on the matter."  *State ex. Rel. Vincent v. Schneider,* 194 S.W.3d 853, 857 (Mo. 2006).  "Because the bulk of contracts signed in this country are form contracts . . . any rule automatically invalidating [such] contracts would be completely

---

[1] While these cases involve the employer-employee context, the holdings are equally applicable to the independent-contractor relationship between Plaintiffs and XPO. If anything, an independent contractor has more bargaining power than a traditional employee given his/her operation of an independent business and the ability to provide services for multiple companies.

unworkable." *Id.* at 857-58.  In other words, there is no "unexpected surprise advantage" simply because the party signs a contract providing for arbitration.  *Id.*  Instead, Missouri law presumes parties have knowledge of agreements they sign, and it is well-established that "those who sign a contract have a duty to read it and may not avoid the consequences of the agreement on the basis that they did not know what they were signing."  *Grossman v. Thoroughbred Ford, Inc.*, 297 S.W.3d 918, 922 (Mo. App. W.D. 2009).

Plaintiffs' generic argument that the parties had disparate bargaining power and bald assertions the agreements were offered on a "take it or leave it" basis are insufficient.  (Dkt. #317, pp. 5-6.)  Plaintiffs have offered no proof they were unable to look elsewhere for a more attractive contract, or that they were somehow forced to enter into the independent-contractor agreements with XPO.  Further, there is no reason to think (much less evidentiary support in the record) that Plaintiffs did not actually desire to enter into mutual arbitration agreements with XPO.  At no point did any Plaintiff seek to revoke or otherwise renegotiate their arbitration agreements with XPO, either before signing the arbitration agreements or during the time they were providing hauling services for XPO pursuant to those agreements. To the contrary, each Plaintiff voluntarily signed the independent-contractor agreements consenting to arbitrate in plain and unambiguous language.  Plaintiffs could have contracted to provide hauling services for other providers, they could have remained employees of the defendant entities or other hauling companies, or they could have engaged in other business ventures.  Simply put, Plaintiffs were under no duress and were not otherwise obligated to accept work from XPO in exchange for compensation.   There is nothing unconscionable about the arbitration agreements, and Plaintiffs fail to offer any evidence or authority suggesting otherwise.

Finally, Section C of Plaintiffs' Supplemental Reply argues the $25,000 amount-in-controversy requirement set forth in the agreements may not be satisfied.  (Dkt. #317, p. 7.)  Plaintiffs fail to point out, however, they already raised this exact argument in 2017, XPO responded, and the Court ruled.  (Dkt. #s 58, 75, 83, 94, 97, 107, 164 at pp. 8-9 (concluding the $25,000 amount-in-controversy requirement was "procedural in nature and for an arbitrator to decide")).   It is not appropriate for Plaintiffs to revisit the $25,000 amount-in-controversy requirement at this stage of litigation, and this is certainly true in light of the fact that Plaintiffs are simply parroting arguments they previously made, without contending the Court misapprehended the facts or controlling law in ruling on this issue.  *Servants of Paraclete,* 204 F.3d at 1012 ("[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. . . .  It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.").  Since XPO already fully responded to this argument, it incorporates those arguments by reference.  (Dkt. #107, pp. 4-6.)

## CONCLUSION

For all the foregoing reasons and those set forth in XPO's Response to Plaintiffs' Motion to Reconsider (Dkt. #299) and XPO's Supplemental Brief (Dkt. #310), XPO respectfully requests the Court deny Plaintiffs' Motion to Reconsider.

Respectfully submitted this 18th day of April, 2019.

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.

*s/ Michelle B. Muhleisen*
Austin E. Smith
Michelle B. Muhleisen
2000 South Colorado Boulevard
Tower Three, Suite 900
Denver, CO  80222
Telephone:  303.764.6800
Facsimile:  303.831.9246
austin.smith@ogletreedeakins.com
michelle.muhleisen@ogletreedeakins.com

*Attorneys for Defendants*
*TransForce, Inc., XPO Logistics Truckload,*
*Inc., Con-way Truckload, Inc.*

6

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of April, 2019, I electronically filed the foregoing **DEFENDANTS XPO LOGISTICS TRUCKLOAD, INC., TRANSFORCE, INC., AND CON-WAY TRUCKLOAD, INC.'S SECOND SUPPLEMENTAL BRIEF RELATED TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF COURT'S ORDER DATED OCTOBER 5, 2017** with the Clerk of Court using the CM/ECF system and served a copy via email on the following counsel of record:

John R. Crone, Esq.
john@crone-law.com

*Attorneys for Plaintiffs*
Mark B. Wiletsky, Esq.
MBWiletsky@hollandhart.com

Robert M. Thomas, Esq.
RMThomas@hollandhart.com

Jeremy Merkelson, Esq.
JBMerkelson@hollandhart.com

*Attorneys for Defendants and Counterclaimant*
*Pathway Leasing, LLC and Matthew Harris*

<em>s/ Victoria J. Perlowski</em><br>
Victoria J. Perlowski, Practice Assistant