IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02242-KLM

FRANKLIN MERRILL, et al.,

      Plaintiffs,

v.

PATHWAY LEASING LLC, a Colorado limited liability company,
MATTHEW HARRIS, an individual,

      Defendants.

_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiffs' unopposed **Request for Written Order on Ruling Granting Pathway Defendants' Motion to Decertify** [#303][1] (the "Motion for Written Ruling"); on Plaintiffs' **Motion to Certify Order Granting Decertification [Dkt. 304] for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b)** [#306] (the "Motion to Certify Appeal"); and on Plaintiffs' **Second Motion for Use of Permissive Joinder Standard for Collectivization, or in the Alternative, Motion for Conditional Certification of Collective Action—Liability Only** [#307] (the "Motion to Certify Collectivization"). Defendants filed Responses [#319, #320] in opposition to the latter two Motions, and Plaintiffs filed Replies [#322, #323]. The Court has reviewed the pertinent briefs, the entire case file, and the applicable law, and is sufficiently advised in the

_____

[1] "[#303]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

premises.   For the reasons set forth below, the Motion for Written Ruling [#303] is **GRANTED**, and the Motion to Certify Appeal [#306] and the Motion to Certify Collectivization [#307] are **DENIED**.

## A.   The Motion for Written Ruling

On February 21, 2019, the Court orally granted Defendants' Motion to Decertify 29 U.S.C. § 216(b) Collective Action [#275] (the "Motion to Decertify") in this Fair Labor Standards Act ("FLSA") case.  *See Minutes* [#304].  At that hearing, the Court invited either party to request a written ruling on that motion in order to more fully explain the Court's reasoning (and, as noted by Plaintiffs, to provide a more concrete basis for an appeal).  Plaintiffs subsequently filed the present Motion for Written Ruling [#303], which the Court grants as follows.

### 1.   Timing

In their Response to the Motion to Decertify [#275], Plaintiffs strenuously argue that "[a]ny motion to decertify must be brought at the close of discovery and prior to trial" by citing to *Thiessen v. General Electric Capital Corporation*, 267 F.3d 1095, 1105 (10th Cir. 2011).  *See* [#285] at 2; *see also id.* (citing  *Lysyj v. Milner Distribution All., Inc.*, No. 13-cv-01930-RM-MJW, 2014 WL 273214, at *3 (D. Colo. Jan. 24, 2014) ("In the second stage, which comes at the conclusion of discovery . . . , the court . . . determine[s] whether the case can proceed as a class action."); *Boldozier v. Am. Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005) ("At the conclusion of discovery, the Court makes a second determination . . . .")).

Defendants correctly point out that neither *Thiessen* nor the two district court cases

-2-

cited by Plaintiffs, *Lysyj* and *Boldozier* (which both explicitly rely on *Thiessen*), hold that a motion to decertify must be made at the close of discovery, or even prior to trial. *Reply* [#288] at 7. Defendants also point to a handful of federal courts and other legal authority which has addressed this issue. *Id.* at 4-5 (citing *Chavez v. IBP, Inc.*, No. CV-01-5093-RHW, 2005 WL 6304840, at *2 (E.D. Wash. May 16, 2005) (noting in a post-bench trial ruling on a motion to decertify that a collective action under § 216(b) is "preliminary until final judgment is issued, and [is] subject to modification prior to a decision on the merits"); *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 571-72 (E.D. La. 2008) (holding in a post-bench trial ruling on a motion to decertify a collective action under § 216(b) that "further consideration of the certification issue is warranted in light of the more fully developed factual record presented at trial" and noting that the court has an "ongoing obligation to monitor the propriety of certification in light of factual developments"); *Roussell v. Brinker Int'l, Inc.*, No. H-05-3733, 2008 WL 2714079, at *16 (S.D. Tex. July 9, 2008) (noting in a pre-trial ruling that the court could entertain a motion to decertify after trial if the evidence demonstrated that the plaintiffs were not similarly situated); *Defs.' Exs. A-B* [#288-1; #288-2]: *Brown v. Dolgencorp, Inc.*, Civ. No. 7:02-cv-0673 (N.D. Ala. Aug. 7, 2006) (decertifying a collective action mid-trial); William F. Allen, *Defending Employers In Complex Wage And Hour Litigation*, Aspatore, 2012 WL 5900370, at *11 (2012) (stating that "[a] court may also decertify a collective action during or after trial"); William C. Jhaveri-Weeks, Austin Webbert, *Class Actions Under Rule 23 and Collective Actions Under the Fair Labor Standards Act: Preventing the Conflation of Two Distinct Tools to Enforce the Wage Laws*, 23 Geo. J. on Poverty L. & Pol'y 233, 245 n. 77 (2016) ("Defendants may also move for decertification at or after trial.").

While none of the legal authority provided by Defendants is binding, the Court finds it persuasive given that neither the parties nor the Court has found any case holding that a motion to decertify a collective action *must* be brought at the close of discovery and *may not* be brought post-trial.  To be sure, such a motion made post-discovery, as opposed to post-trial, would certainly help streamline the proceedings in a collective action under many, if not most, circumstances, as Plaintiffs allude.  Regardless, given the above non-binding authority, and in the absence of any legal authority directly to the contrary, the Court finds that Defendants' Motion to Decertify [#275] was timely filed.

### 2.  Decertification

29 U.S.C. § 216(b) permits an FLSA claim to be "maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  The Court uses a two-step process to determine whether the plaintiffs are "similarly situated."  *Thiessen v. Gen Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2011).  As is relevant here, at the second step, "the trial court conducts a 'stricter' analysis to decide whether the collective it initially approved is indeed composed of similarly-situated individuals."  *Oldershaw v. DaVita HealthCare Partners, Inc.*, No. 15-cv-01964-MSK-NYW, 2019 WL 427650, at *2 (D. Colo. Feb. 4, 2019).  The three major factors to be considered by the Court are: (1) "any disparate factual and employment settings among the individual plaintiffs;" (2) "the various defenses available to the defendant that might be individual as to each plaintiff;" and (iii) "'fairness and procedural considerations'." *Id.* (quoting *Thiessen*, 267 F.3d at 1103).

### a.  Plaintiffs' Disparate Factual and Employment Settings

Regarding the first factor, the Court is concerned about the individualized factual

considerations that must be analyzed in reaching conclusions about damages.  Plaintiffs'

damages formula, as demonstrated by Plaintiffs' Trial Exhibit 136, involves three factors:

(1) the number of hours worked by each Plaintiff, (2) the minimum wage, and (3) the

amount actually paid each Plaintiff by Defendants.  The formula takes the number of hours

worked by each Plaintiff (1), multiples that by the minimum wage (2), and then subtracts

the amount actually paid to each Plaintiff (3) to calculate the alleged amount of unpaid

minimum wages owed to each Plaintiff.  However, determination of two of these factors,

(1) and (3), must be made on an individualized basis.

    First, the number of hours worked by each Plaintiff each week requires an

individualized calculation *unless* the Court accepts Plaintiffs' position that each Plaintiff

regularly worked 70 hours per week.   However, the evidence presented at trial

demonstrates the implausibility of this proposition.  For example, as Defendants point out,

the owner settlement statements[2] show wide variances in the numbers of miles driven by

each Plaintiff per week.  *See, e.g., Trial Ex. E* at 80-81 (settlement statement for Anthony

Dennis showing 581 miles driven for the January 1, 2016 settlement period); *id.* at 122-23

(settlement statement for Anthony Dennis showing 2,950 miles driven for the April 8, 2016

settlement period); *Trial Ex. H5* at 74-75 (settlement statement for Julian LaFranks showing

1,021 miles driven for the July 1, 2016 settlement period);  *id.* at 95-96 (settlement

---

[2] The owner settlement statements were prepared by former defendant Con-way Truckload,
Inc.  *See, e.g., Trial Tr. Vol. I* [#276] at 184; *Trial Tr. Vol. II* [#277] at 27; *Trial Tr. Vol. III* [#278] at
120; *see also Joint Proposed Stipulations of Fact* [#258-1] ¶ 19 (stating that former defendant XPO
Logistics Truckload, Inc. was formerly known as Con-way Truckload, Inc. and is now known as
Contract Freighters, Inc. ("CFI")).  The statements were entered into evidence at the trial based on
the parties' stipulation.  *See Joint List of Stipulated Exhibits Offered by Parties* (stipulating to owner
settlement statements found at Exhibits E, I, M, R, Y, B1, O1, V1, B2, J2, M2, P2, U2, X2, A3, F3,
I3, P3, Q3, Y3, C4, F4, J4, M4, Q4, U4, A5, E5, H5, K5, M5, Q5, T5, Z5, C6, G6, J6, L6, and P6).

statement for Julian LaFranks showing 3,130 miles driven for the September 16, 2016 settlement period); *Trial Ex. U4* at 225-26 (settlement statement for Paula Horion showing 691 miles driven for the December 5, 2014 settlement period); *id.* at 255-56 (settlement statement for Paula Horion showing 4,198 miles driven for the July 25, 2015 settlement period).    The widely-varying number of miles driven, as reflected in the settlement statements, makes it impossible to conclude that each Plaintiff averaged 70 hours of work per week[3] without examining the evidence as to each Plaintiff individually, including, for example whether low-mileage weeks were due to time when a Plaintiff's truck was under maintenance or repair or time that a Plaintiff took off from work.[4]

Further, the evidence overwhelmingly established that most of Plaintiffs' trucks needed maintenance and/or repair, and, depending on the precise circumstances surrounding the maintenance/repair, that time may not always be included in compensable weekly working time.  *See, e.g., Trial Tr. Vol. I* [#276] at 199-200 (Becky Austin testifying that she would sometimes be present at the repair shop, sometimes be at a hotel, and sometimes be at home while truck repairs were underway); *id.* at 128-30, 133 (Frank Merrill testifying that he was not claiming time at home when the truck was in repair (although he would check in at least briefly every day) but that he was claiming time away from home

---

[3] There is only one pay period for one Plaintiff, Becky Austin, which Plaintiffs concede did not meet the 70-hour average and for which Plaintiffs calculate damages based on a 35-hour work week.  *See Pls.' Trial Ex. 136, Pls.' Fourth Revised Damages Calculations* at 4.

[4] For purposes of the Motion to Decertify [#275], the Court makes no finding regarding the actual, or even the average, number of hours worked by each Plaintiff.  Indeed, some, or even many, *may* have averaged 70 hours per week.  However, the point here is that the evidence is too widely varied to permit this inference based on a representative sampling of Plaintiffs' evidence. Rather, the Court must examine the evidence as to each Plaintiff's specific circumstances to determine the amount of damages, if any, each is owed.

when the truck was in repair); *Trial Tr. Vol. II* [#276] at 59-61 (Rodney Lacey testifying that, regardless of whether he was on the road or staying at home at night, he would be at the repair shop watching them work the entire time the truck was in the shop).  Thus, the evidence varies widely regarding the amount of time each Plaintiff's vehicle spent in maintenance/repair and whether each Plaintiff waited while repairs were made (which may be compensable time) or waited at home (which may be non-compensable time).[5]  *See, e.g.*, *Browne v. P.A.M. Transport, Inc.*, No. 5:16-CV-5366, 2018 WL 5118449 (W.D. Ark. Oct. 19, 2018) (holding that all hours spent "on duty" are compensable, in the absence of agreement to the contrary to the extent not barred by regulation).

In addition, the Plaintiff drivers admitted to taking time off of work, like most employees do in any typical job.  *See, e.g.*, *Trial Tr. Vol. I* [#276] at 199 (Becky Austin testifying that "everybody" takes time off from driving; *Trial Tr. Vol. III* [#278] (Craig Williams testifying that drivers could take time off when they wanted).  Some drivers also conceded that they may not have worked 70 hours every week.  *See, e.g.*, *Trial Tr. Vol. IV* [#279] at 37 (Anthony Dennis stating that it was "possible" that he did not work 70 hours every single one of those weeks); *id.* at 83-84 (Tami Potirala stating that most weeks, at least, she worked 70 hours per week but could not confirm that for all weeks).

Finally, the amount actually paid to Plaintiff drivers requires individualized considerations for some drivers who took advances on pay and did not include those amounts in their statements of the "amounts actually paid."  *See, e.g.*, *Trial Tr. Vol. I* [#276]

---

[5]  For purposes of the Motion to Decertify [#275], the Court makes no finding on precisely what is or is not compensable time in connection with repairs but merely notes that each Plaintiff's circumstances differed widely and must be examined on an individual basis.

at 138-39.  Thus, considerations regarding the cash advances that some Plaintiffs received must be made on an individual basis.

The record citations provided above are not comprehensive; rather, they merely illustrate the disparate factual circumstances of each Plaintiff based on the evidence before the Court.  In short, given consideration of the settlement statements, the records regarding number of miles driven, issues surrounding where each Plaintiff spent time while a vehicle was in repair, cash advances, and time off, the Court finds that there are numerous individualized factual considerations that must be analyzed in reaching the damages determination, and therefore that this factor supports decertification.

### b.    Defendants' Individualized Defenses

Regarding the second factor, Defendants first direct the Court's attention to *Blair v. TransAm Trucking, Inc.*, 309 F. Supp. 3d 977, 1011 n.236 (D. Kan. 2018), an FLSA case in which the leased-truck drivers were paid via settlement statements, as occurred here. With respect to this factor, the court held that the defendant was "entitled to defend against each claim individually" by providing "'week-by-week, driver-by-driver' evidence" on whether each plaintiff received the minimum wage for each week.  *Id.* at 1011-12.  Because this type of evidence could not "be offered on a class-wide basis," the court there found that this factor "weigh[ed] in favor of decertification."  *Id.* at 1012.

Defendants also cite *Green v. Harbor Freight Tools USA, Inc.*, 888 F. Supp. 2d 1088, 1103-04 (D. Kan. 2012), in which the defendant pointed to evidence "calling into question the credibility of Plaintiffs' claims, including Plaintiffs' . . . contradictory testimony and sworn discovery responses."  In part because of this, the court in *Harbor Freight* found that the individualized defenses for each opt-in plaintiff weighed against continued

certification.  In *Scott v. Raudin McCormick, Inc.*, No. 08-4045-EFM, 2010 WL 5093650, at *4 (D. Kan. Dec. 8, 2010), the court held: "Because the analysis regarding class eligibility and damages are highly fact-specific and individualized to each Plaintiff driver, Defendants' defenses as to each Plaintiff are similarly highly individualized.  Defendants assert[ ] that a number of the Plaintiffs have claimed they either received no pay for overtime, some pay, or all pay to which they were entitled."

Defendants have presented evidence at trial that at least some Plaintiffs received statutory minimum wages for some settlement periods at issue, and that some Plaintiffs' testimony lacks credibility.[6]  Defendants are entitled to address these issues regarding each Plaintiff individually.  Thus, the Court finds that this factor weighs in favor of decertification.

### c.    Fairness and Procedural Considerations

Regarding the third factor, i.e., fairness and procedural considerations, Plaintiffs assert:

> [T]hey would suffer severe prejudice if Defendants' late-filed Motion was granted.  All named Plaintiffs already incurred the expense of testifying at trial, most in person and some by video.  Some Plaintiffs testified in a representative capacity and some testified only to state law claims. Notwithstanding, Defendants could have elicited testimony on their "individualized defenses" from every testifying Plaintiff but chose not to.  This is why decertification, as indicated in *Thiessen*, is a "trial management" tool and should not be used in this instance to impair substantive rights.  And critically, what of the testifying Plaintiffs that did not testify on FLSA matters because they rightly and justifiably believed they were testifying in a representative capacity?  Defendants would have this Court dismiss their claims (which implicates problematic due process issues) and the Court should reject this request.

---

[6]  Again, the Court makes no finding here on these issues, but, for purposes of the Motion to Decertify [#275], these issues illustrate why the Court must individually analyze the evidence as to each Plaintiff's FLSA claim.

*Response* [#285] at 3 n.3.

Defendants contest that Plaintiffs would be subject to any prejudice.  *Reply* [#288]

at 9-10.  They first argue that, "[a]s collective-action representatives, all Named Plaintiffs

were required to establish both their individual FLSA minimum-wage claims and the claims

of Opt-Ins who did not testify at trial," and, therefore, "[r]egardless of whether the action is

decertified, all Named Plaintiffs were required to prove their own FLSA minimum wage

claims, and any 'prejudice' resulting from their failure to do so was self-inflicted." *Id.* at 9

(citing *Oldershaw*, 255 F. Supp. 3d at 1113 (stating that "every named and 'opt-in' plaintiff

pursues his or her individual claim" in an FLSA collective action); 7B FED. PRAC. & PROC.

§ 1807 (3d ed. 2011) ("[O]nly those plaintiffs who have opted in are bound by the results

of the litigation.")).

Second, Defendants relatedly argue, without further citation to legal authority, that,

"regardless of whether this action is decertified now or had been decertified before trial,

each Named Plaintiff was required to prove his or her individual FLSA minimum-wage claim

at trial," and therefore, "whether the Named Plaintiffs had to present relevant testimony did

not turn on the timing of the decertification motion."  *Id.* at 9-10.

Finally, Defendants argue that "decertification will not prejudice the Opt-In Plaintiffs,

because the dismissal of their claims will be without prejudice, and they will enjoy the

benefits of the collective discovery and trial efforts to date."  Defendants further assert that

"the statute of limitations for the Opt-In Plaintiffs to bring their FLSA minimum-wage claims

was tolled when they filed their consents to join the lawsuit, and the limitations period will

begin to run again only when the Court decertifies the collective action."  *Id.* at 10.

The Court has no intention of impairing the substantive rights of either the named

Plaintiffs or of the opt-in Plaintiffs.  As stated on the record at the February 21, 2019 hearing, the opt-in Plaintiffs' claims were dismissed without prejudice and so they have been free since that date to file lawsuits in their own right.  Further, the Court will provide Plaintiffs with an opportunity to file a motion for a new trial pursuant to Fed. R. Civ. P. 59(a) to the extent they believe one is necessary.[7]  Thus, the Court finds that this factor does not bar decertification of the collective action.

After considering the relevant factors, the Court finds that decertification of the collective action is appropriate due to individualized evidence as to both the fact of damage and as to the amount of damages for each Plaintiff.  Accordingly, the Motion for Written Ruling [#303] is **granted** and, for the reasons stated herein and at the February 21, 2019 hearing, Defendants' Motion to Decertify [#275] is **granted**, and the opt-in Plaintiffs' claims are **dismissed without prejudice**.

## B.    The Motion to Certify Collectivization

The Motion to Certify Collectivization [#307] seeks two rulings, one in the alternative of the other.  Plaintiffs first ask the Court to utilize the "permissive joinder" standard in collectivizing this suit.  *Motion* [#307] at 3-4 (citing *Turner v. Chipotle Mexican Grill, Inc.*,

---

[7]  Fed. R. Civ. P. 59(a)(1)(B) provides: "The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: . . . after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court."  Fed. R. Civ. P. 59(a)(2) provides: "After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment."  Fed. R. Civ. P. 59(d) provides: "No later than 28 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion.  After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion.  In either event, the court must specify the reasons in its order."  Of course, any motion for a new trial need not seek a complete retrial, but, rather, may be narrowly tailored to address the taking of "*additional* testimony" only.  Fed. R. Civ. P. 59(a)(2) (emphasis added).

123 F. Supp. 3d 1300 (D. Colo. 2015) (Kane, J.)).  Alternatively, Plaintiffs ask the Court to certify this case as a collective action as to liability only.  The Court addresses each alternative in turn.

### 1.   Permissive Joinder Standard

Plaintiffs first ask the Court to utilize the "permissive joinder" standard in collectivizing this suit.  Plaintiffs previously asked the Court to do so, *see Motion* [#18] at 3-4, a request which the Court denied, *see Order* [#115] at 3 n.2.  At that time, the Court noted:

> Plaintiffs urge the Court to adopt the "permissive joinder standard" used in *Turner v. Chipotle Mexican Grill, Inc.*, 123 F. Supp. 3d 1300 (D. Colo. 2015) (Kane, J.).  *Motion* [#18] at 3-4.  However, despite the *Turner* decision, the undersigned is bound by Tenth Circuit precedent from *Thiessen v. General Electric Capital Corporation*, 267 F.3d 1095, 1105 (10th Cir. 2001), and other Tenth Circuit cases mandating application of the two-step conditional certification process for collective actions brought under the FLSA.

*Id.*

Here, the parties dispute whether Plaintiffs' request is in essence a motion for reconsideration of the Court's prior Order [#115], which would place a higher burden on Plaintiffs.  *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (stating that a motion to reconsider is only "appropriate where the court has misapprehended the facts, a party's position, or the controlling law").  However, even assuming Plaintiffs' request is not construed as a motion for reconsideration and is therefore adjudicated under the lesser standard, Plaintiffs' request is denied for the reasons that follow.

*Thiessen* involved a collective action under the ADEA, but because the ADEA expressly borrows the opt-in collective action mechanism of the FLSA, *see* 29 U.S.C. § 626(b) (incorporating 29 U.S.C. § 216(b)), courts have routinely applied *Thiessen* to FLSA

collective actions. *See, e.g., MacDonald v. Covenant Testing Techs., LLC*, No. 18-cv-02290-NRN, 2019 WL 1755282, at *3 n.3 (D. Colo. Apr. 18, 2019). In short, in *Thiessen*, the Tenth Circuit Court of Appeals approved of the so-called two-step *ad hoc* approach to determining whether plaintiffs are "similarly situated," first broadly determining whether the plaintiffs are similarly situated early in the case and then later utilizing a stricter standard based on the evidence of the case to determine whether those plaintiffs are actually similarly situated. 267 F.3d at 1102-03, 1105. In *Turner*, 123 F. Supp. 3d at 1309, *Thiessen*'s two-step *ad hoc* process was rejected in favor of a permissive joinder standard "presumptively allow[ing] workers bringing the same statutory claim against the same employer to join as a collective, with the understanding that individuals may be challenged and severed from the collective if the basis for their joinder proves erroneous."

The Court offers no opinion regarding the merits of *Turner*'s legal analysis because the undersigned finds that it is bound by *Thiessen*, as other judicial officers in this district who have addressed the issue have also determined. *See, e.g., MacDonald*, 2019 WL 1755282, at *3 n.4 ("Mr. MacDonald argues the Court should apply the presumptive joinder standard articulated by Judge Kane in *Turner*. The Court declines to do so, and instead applies the first step in the two-step conditional certification process for FLSA collective actions endorsed by *Thiessen* and other Tenth Circuit precedent." (internal citation omitted)); *Harris v. DaVita Healthcare Partners, Inc.*, Nos. 17-cv-02741-MSK-NYW, 17-cv-02744-MSK-NYW, 2019 WL 422318, at *2 n.3 (D. Colo. Feb. 4, 2019) ("The Court rejects the Plaintiffs' argument that it should instead adopt the even looser standard articulated by [*Turner*]. *Turner* appears to suggest that the only constraint on the scope of the first stage determination is whether the 'workers [are] bringing the same statutory claim against the

-13-

same employer.'  Although this Court agrees with several aspects of Judge Kane's analysis in *Turner*, it does not agree that the standard the Court should apply at the first stage is so ephemeral."); *Fuentes v. Compadres, Inc.*, No. 17-cv-01180-CMA-MEH, 2018 WL 2126840, at *2 (D. Colo. May 9, 2018) ("Despite the *Turner* decision, this Court is bound by long-standing Tenth Circuit precedent mandating the application of the two-step conditional certification process for collective actions brought under the FLSA.  Accordingly, the Court declines to apply *Turner* and adheres to the two-step process[ ]" (internal citation omitted)); *Slaughter v. Sykes Enters., Inc.*, No. 17-cv-02038-KLM, 2018 WL 1556881, at *1 n.2 (D. Colo. Mar. 12, 2018) (same); *Valverde v. Xclusive Staffing, Inc.*, No. 16-cv-00671-RM-MJW, 2017 WL 6945044, at *2 n.1 (D. Colo. Oct. 31, 2017), *report and recommendation rejected in part on other grounds by Valverde v. Xclusive Staffing, Inc.*, No. 16-cv-00671-RM-KLM, 2018 WL 4178532 (D. Colo. Aug. 31, 2018) (same).

Accordingly, the Motion to Certify Collectivization [#307] is **denied** to the extent Plaintiffs request that the Court use *Turner*'s permissive joinder standard for collectivization.

## 2.    Conditional Certification

In the alternative, Plaintiffs ask the Court to conditionally re-certify this case as a collective action as to liability only.  *Motion to Certify Collectivization* [#307] at 4-5.   In support of the Court's ability to bifurcate liability from damages in an FLSA case and to certify the action as to liability only, Plaintiffs rely on 29 U.S.C. § 216(b), Fed. R. Civ. P. 42, and *Oldershaw*, 255 F. Supp. 3d at 1112.  *Id.* at 2. n.1.

The Court first notes that Fed. R. Civ. P. 42 permits bifurcation of issues *for the purpose of ordering a separate trial* "[f]or convenience, to avoid prejudice, or to expedite

and economize."  Reliance on Rule 42 post-trial is unprecedented, as far as the Court can determine.  Plaintiffs have cited no legal authority supporting use of the rule in these circumstances, and the Court has found none.

Next, *Oldershaw* discusses bifurcation of multiple *claims* made in a single lawsuit but does not address certification of an FLSA action for purposes of liability only. *Oldershaw* ultimately bifurcated the FLSA claims from the state law claims arising under the Colorado Wage Claim Act but did not address, or even mention, bifurcating the FLSA claims in a manner relevant here.  255 F. Supp. 3d at 1119.

29 U.S.C. § 216(b) permits an FLSA claim to be "maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  The language of the statute (quoted here or otherwise) cannot be read to permit bifurcation of collective actions, as is permitted with class actions under Rule 23.  *See, e.g.*, *Wallace v. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013); Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues.").

Plaintiffs offer no other authority to support their argument that the Court may certify a collective action as to liability only.  Even were the Court inclined to do here what can be done under Rule 23(c)(4), the entire rationale for proceeding as a collective action would be negated; in other words, such a course of action here would not promote the efficient resolution in one proceeding of common issues of law and fact arising from the same alleged activity.  *See, e.g.*, *Hoffman–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

Thus, in the absence of any legal authority demonstrating that the Court may certify a collective action under 29 U.S.C. § 216(b) as to liability only, the Motion to Certify

Collectivization [#307] is **denied** to the extent Plaintiffs ask the Court to conditionally re-certify this case as a collective action as to liability only.

**C.      The Motion to Certify Appeal**

The Motion to Certify Appeal [#306] asks the Court to certify its February 21, 2019 oral ruling (and subsequent written ruling, *see* § II.A. *supra*) on Defendants' Motion to Decertify [#275].  *See Minutes* [#304].

28 U.S.C. § 1292(b) provides in relevant part:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order . . . .

Four criteria must be met before an order may be certified for immediate interlocutory appeal pursuant to this statute.  *Carbajal v. Keefer*, 51 F. Supp. 3d 1065, 1068 (D. Colo. 2014).  The criteria are: "(1) the action must be a civil action; (2) the court must conclude that the order involves a controlling question of law; (3) there must be substantial ground for difference of opinion as to the resolution of that question; and (4) it must appear that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  *Id.*  Although the Court has discretion under the statute to determine whether an order should be certified for interlocutory appeal, such requests are granted in only "exceedingly rare" circumstances.  *Id.* (citing *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 47 (1995); *State of Utah By & Through Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994)).

The first criterion is plainly met, as this lawsuit is a civil action.  *See Carbajal*, 51 F.

Supp. 3d at 1068.

The second criterion asks whether the order at issue involves a controlling question of law.  *Id.*  "[A] 'controlling question of law' is one that, if resolved differently, would entitle a party to judgment [and] obviate the need for further proceedings in the case."  *Boellstorff v. State Farm Mut. Auto. Ins. Co.*, No. 05-cv-02192-MSK-CBS, 2007 WL 552247, at *2 (D. Colo. Feb. 20, 2007).  "Question of law" means a "question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine . . . ."  *XTO Energy, Inc. v. ATD, LLC*, 189 F. Supp. 3d 1174, 1193 (D.N.M. 2016) (quoting *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000) (Posner, J.)).  A question of law must not require the appellate court to "delve beyond the surface of the record in order to determine the facts."  *XTO Energy, Inc.*, 189 F. Supp. 3d at 1193 (quoting *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004)).  In other words, "[t]he legal question must be stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law."  *Id.*

Plaintiffs argue that the Court erred both in its initial decision to entertain the Motion to Decertify [#275] post-trial and in decertification of the collective action.  *Motion to Certify Appeal* [#306] at 4.  However, neither of these determinations implicates a controlling question of law.  Rather, the timing of decertification is a procedural determination about which Plaintiffs have failed to show that there is either a conflict of law or a lack of legal authority.  With respect to the decertification itself, Plaintiffs simply disagree with the Court's assessment of the trial evidence based on the application of settled law. The Court cannot find that either of these constitutes the type of "controlling question of law"

contemplated by 28 U.S.C. § 1292(b).  A different determination on either of these questions simply would not "entitle a party to judgment [and] obviate the need for further proceedings in the case."  *See Boellstorff*, 2007 WL 552247, at *2.

Because Plaintiffs fail to meet the second criterion for certification of an immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b), the Motion to Certify Appeal [#306] is **denied**.

## IV.  Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion for Written Ruling [#303] is **GRANTED**.

IT IS FURTHER **ORDERED** that the Motion to Certify Appeal [#306] is **DENIED**.

IT IS FURTHER **ORDERED** that the Motion to Certify Collectivization [#307] is **DENIED**.

In light of these rulings,

IT IS FURTHER **ORDERED** that any Motion for New Trial under Rule 59(a) shall be filed **on or before October 23, 2019**.

Dated:  October 9, 2019

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge